396 P.2d 186

John BURCHETT and Tinnie Burchett,
Plaintiffs-Appellees,

v.

ALLIED CONCORD FINANCIAL CORPO-
RATION (DELAWARE), Defend-
ant-Appellant.

Harol D. BEEVERS and Marie Beevers,
Plaintiffs-Appellees,

v.

ALLIED CONCORD FINANCIAL CORPO-
RATION (DELAWARE), Defend-
ant-Appellant.

No. 7442.

Supreme Court of New Mexico.

Oct. 19, 1964.

Modrall, Seymour, Sperling, Roehl &
Harris, Allen C. Dewey, Albuquerque, for
appellant.

Gore & Nieves, Clovis, for appellees.

CARMODY, Justice.

Plaintiffs-appellees filed separate com-
plaints to have certain notes and mortgages
held by defendant-appellant cancelled and

declared void. The cases were consolidated below and on this appeal, which is from the judgments voiding the instruments.

The facts, except for one small detail, are the same. It seems that a man named Kelly represented himself as selling Kaiser aluminum siding for a firm named Consolidated Products of Roswell. None of the parties knew Kelly, nor had they seen him before. In each case, Kelly talked to the husband and wife (appellees) at their homes, offering to install aluminum siding on each of their houses for a certain price in exchange for the appellees' allowing their houses to be used for advertising purposes as a "show house," in order to further other sales of aluminum siding. Kelly told both of the families that they would receive a $100 credit on each aluminum siding contract sold in a specified area in Clovis, and that this credit would be applied toward the contract debt, being the cost of the installation of the siding on the appellees' houses. The appellees were assured, or at least understood, that by this method they would receive the improvements for nothing.

Following the explanation by Kelly, both families agreed to the offer and were given a form of a printed contract to read. While they were reading the contract, Kelly was filling out blanks in other forms. After the appellees had read the form of the contract submitted to them, they signed, *without reading,* the form or forms filled out by Kelly, assuming them to be the same as that which they had read and further assuming that what they signed provided for the credits which Kelly assured them they would receive. Needless to say, what appellees signed were notes and mortgages on the properties to cover the cost of the aluminum siding, and contracts containing no mention of credits for advertising or other sales.

One additional fact occurred in the case of the appellees Beevers. A few days after the original signing, Kelly again approached Mr. Beevers at his home and told him that the television and newspaper authorization that he had previously executed had been destroyed and he needed another one. Mr. Beevers, again without reading what was submitted, signed the additional form. Kelly then went to Mrs. Beevers' place of employment and she also signed the same without any examination, in view of Kelly's representations and her observation that her husband had already signed the form. The instrument was the promissory note.

Within a matter of days after the contracts were signed, the aluminum siding was installed, although in neither case was the job completed to the satisfaction of appellees. Sometime later, the appellees received letters from appellant, informing them that appellant had purchased the notes and mortgages which had been issued in favor of Consolidated Products and that appellees were delinquent in their first pay-

ment. Upon the receipt of these notices, appellees discovered that mortgages had been recorded against their property and they immediately instituted these proceedings.

Suit was actually brought not only against the appellant but also against James T. Pirtle, doing business under the name of Consolidated Products, Shirley McVay, a notary public in Roswell, and Kelly. No service was obtained upon Kelly, and the other parties to the proceedings below did not appeal because the judgment merely voided the notes and mortgages.

In both cases, the trial court found that the notes and mortgages, although signed by the appellees, were fraudulently procured. The court also found that the appellant paid a valuable consideration for the notes and mortgages, although at a discount, and concluded as a matter of law that the appellant was a holder in due course. The findings in both of the cases are substantially the same, with the exception that the court found in the Burchett case that the Burchetts were not guilty of negligence in failing to discover the true character of the instruments signed by them. There is no comparable finding in the Beevers case.

It is of passing interest to note that there was a definite conflict in the testimony, particularly with reference to the Burchetts, as to what, if any, of the instruments were actually signed by the Burchetts. However, at the appellees' request, the documents were submitted to an expert who determined that the signatures of all the parties were genuine, and the trial court accepted the expert's determination.

The trial court's decisions are grounded upon two propositions, (1) that the acknowledgments on the mortgages were nullities and therefore that the mortgages were not subject to record, and (2) that fraud in their inception rendered the notes and mortgages void for all purposes.

The theory relating to the first of the above reasons would seem to be that inasmuch as the acknowledgments were invalid the instruments were not entitled to be recorded and therefore appellant, which would not have purchased the unrecorded mortgages, is in no better position than the original mortgagee. However, these conclusions by the trial court are really of no consequence, in view of its conclusion that the appellant was a holder in due course. Actually, because of the trial court's determination that appellant was a holder in due course, it makes no difference whether the instruments were entitled to record or not; thus we do not deem it necessary for decision to consider the effect of the void acknowledgments. The only real question in the case is whether, under these facts, appellees, by substantial evidence, satisfied the provisions of the statute relating

to their claimed defense as against a holder in due course.

In 1961, by enactment of ch. 96 of the session laws, our legislature adopted, with some variations, the Uniform Commercial Code. The provision of the code applicable to this case appears as § 50A–3–305(2) (c), N.M.S.A.1953, Replacement Volume 8, Part 1, which, so far as material, is as follows:

"To the extent that a holder is a holder in due course he takes the instrument free from

" * * *

"(2) all defenses of any party to the instrument with whom the holder has not dealt except

" * * *

"(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

" * * *."

Although fully realizing that the official comments appearing as part of the Uniform Commercial Code are not direct authority for the construction to be placed upon a section of the code, nevertheless they are persuasive and represent the opinion of the National Conference of Commissioners on Uniform State Laws and the American Law Institute. The purpose of the comments is to explain the provisions of the code itself, in an effort to promote uniformity of interpretation. We believe that the official comments following § 3–305 (2) (c), Comment No. 7, provide an excellent guideline for the disposition of the case before us. We quote the same in full:

"7. Paragraph (c) of subsection (2) is new. It follows the great majority of the decisions under the original Act in recognizing the defense of 'real' or 'essential' fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.

"The test of the defense here stated is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, in-

cluding the age and sex of the party, his intelligence, education and business experience; his ability to read or to understand English, the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him, or any other possibility of obtaining independent information; and the apparent necessity, or lack of it, for acting without delay.

"Unless the misrepresentation meets this test, the defense is cut off by a holder in due course."

We observe that the inclusion of subsection (2) (c) in § 3–305 of the Uniform Commercial Code was an attempt to codify or make definite the rulings of many jurisdictions on the question as to the liability to a holder in due course of a party who either had knowledge, or a reasonable opportunity to obtain the knowledge, of the essential terms of the instrument, before signing. Many courts were in the past called upon to determine this question under the Uniform Negotiable Instruments Law. Almost all of the courts that were called upon to rule on this question required a showing of freedom from negligence, in order to constitute a good defense against a bona fide holder of negotiable paper.

One of the clearest statements of the rule under the Negotiable Instruments Law, which has received widespread approval, appears in United States v. Castillo (D. N.M.1954), 120 F.Supp. 522, as follows:

"Although a holder in due course holds an instrument such as the instant one free from any defect of title, and free from defenses available to prior parties among themselves insofar as a voidable instrument is concerned, where fraud in the inception is present, such as here, such fraud makes the instrument an absolute nullity and not merely voidable. However, to completely invalidate the enforceability of a negotiable promissory note the fraud perpetrated must be such as to induce the maker of the note to execute the same under the mistaken belief that the instrument being signed is something other than a promissory note and must come about as a direct result of misrepresentation on the part of the payee or his agent. Naturally, the maker cannot be guilty of negligence in signing a written instrument and then defend upon the ground of lack of knowledge where in the exercise of reasonable prudence the attempted fraud could be discovered; and, generally it is no defense to the enforcement of an obligation like the instant one to insist that a fraud has been wrought

where the maker does not take the care to read the instrument being signed, inasmuch as such an omission generally constitutes negligence. If such were not the general rule, where a person is of average intelligence and is qualified to read, then every negotiable instrument would be clouded with the possible defense that the maker did not read the instrument prior to signing it. However, the failure to read an instrument is not negligence per se but must be considered in light of all surrounding facts and circumstances with particular emphasis on the maker's intelligence and literacy."

We recognize that, in Castillo, the United States District Court for New Mexico found the instrument to be void, and properly so under the facts of that case. It is worthy of note, however, that the rule with respect to negligence has been applied in rejecting the defense of the maker in the Pennsylvania decisions subsequent to that state's adoption of the Uniform Commercial Code, First National Bank of Philadelphia v. Anderson, 1956, 7 Pa.Dist. & Co.R.2d 661, and Equitable Discount Corp. v. Fischer, 1957, 12 Pa.Dist. & Co.R.2d 326; as well as in the appellate courts of states which had not on the date of the decisions adopted the Uniform Commercial Code. New Jersey Mtg. and Invest. Co. v. Dorsey, 1960, 60 N.J.Super. 299, 158 A.2d 712; Bancredit, Inc. v. Bethea, 1961, 68 N.J.

Super. 62, 172 A.2d 10; Amato v. Fullington, 1958, 213 Or. 71, 322 P.2d 309. Many decisions on this question are contained in the annotation 160 A.L.R. 1295, particularly at 1310 and 1328; and at 1335, under the subhead "Legerdemain; Trick.," several cases are annotated, some of which involve similar, although not identical, facts to those at issue here. And see 5 Uniform Laws Annotated, Part 2, Negotiable Instruments, § 57, Note 43.

The reason for the rule, both as it was applied under the Negotiable Instruments Law and as is warranted under the Uniform Commercial Code, is that when one of two innocent persons must suffer by the act of a third, the loss must be borne by the one who enables the third person to occasion it.

We believe that the test set out in Comment No. 7 above quoted is a proper one and should be adhered to by us. (By giving approval to this Comment, we do not in any sense mean to imply that we thereby are expressing general approval of all the Comments to the various sections of the Uniform Commercial Code.) Thus the only question is whether, under the facts of this case, the misrepresentations were such as to be a defense as against a holder in due course.

The facts and circumstances surrounding each particular case, both under the Negotiable Instruments Law and the Uniform

Commercial Code, require an independent determination. See United States v. Castillo, supra; United States v. Tholen (N. D.Iowa 1960), 186 F.Supp. 346; First National Bank of Philadelphia v. Anderson, supra; Equitable Discount Corp. v. Fischer, supra.

Applying the elements of the test to the case before us, Mrs. Burchett was 47 years old and had a ninth grade education, and Mr. Burchett was approximately the same age, but his education does not appear. Mr. Burchett was foreman of the sanitation department of the city of Clovis and testified that he was familiar with some legal documents. Both the Burchetts understood English and there was no showing that they lacked ability to read. Both were able to understand the original form of contract which was submitted to them. As to the Beevers, Mrs. Beevers was 38 years old and had been through the ninth grade. Mr. Beevers had approximately the same education, but his age does not appear. However, he had been working for the same firm for about nine years and knew a little something about mortgages, at least to the extent of having one upon his property. Mrs. Beevers was employed in a supermarket, and it does not appear that either of the Beevers had any difficulty with the English language and they made no claim that they were unable to understand it.

Neither the Beevers nor the Burchetts had ever had any prior association with Kelly and the papers were signed upon the very day that they first met him. There was no showing of any reason why they should rely upon Kelly or have confidence in him. The occurrences took place in the homes of appellees, but other than what appears to be Kelly's "chicanery," no reason was given which would warrant a reasonable person in acting as hurriedly as was done in this case. None of the appellees attempted to obtain any independent information either with respect to Kelly or Consolidated Products, nor did they seek out any other person to read or explain the instruments to them. As a matter of fact, they apparently didn't believe this was necessary because, like most people, they wanted to take advantage of "getting something for nothing." There is no dispute but that the appellees did not have actual knowledge of the nature of the instruments which they signed, at the time they signed them. Appellant urges that appellees had a reasonable opportunity to obtain such knowledge but failed to do so, were therefore negligent, and that their defense was precluded.

We recognize that the reasonable opportunity to obtain knowledge may be excused if the maker places reasonable reliance on the representations. The difficulty in the instant case is that the reliance upon the

representations of a complete stranger (Kelly) was not reasonable, and all of the parties were of sufficient age, intelligence, education, and business experience to know better. In this connection, it is noted that the contracts clearly stated, on the same page which bore the signatures of the various appellees, the following:

"No one is authorized on behalf of this company to represent this job to be 'A SAMPLE HOME OR A FREE JOB.'"

The conduct of the Beevers in signing the additional form some weeks after the initial transaction, without reading it, is a graphic showing of negligence. This, however, is merely an added element and it is obvious that all of the parties were negligent in signing the instruments without first reading them under the surrounding circumstances. See First National Bank of Philadelphia v. Anderson, supra, which held that the mere failure to read a contract was not sufficient to allow the maker a defense under § 3–305 of the Uniform Commercial Code. In our opinion, the appellees here are barred for the reasons hereinabove stated.

Although we have sympathy with the appellees, we cannot allow it to influence our decision. They were certainly victimized, but because of their failure to exercise ordinary care for their own protection, an innocent party cannot be made to suffer.

The cases before us are surprisingly similar to the Oregon case of Amato v. Fullington, supra, which involved a contract for the installation of siding and roofing on dwelling houses, and there the Supreme Court of Oregon, referring to the question of negligence on the part of the maker of a negotiable note, stated:

"* * * Here the plaintiff, although a man of quite limited education, was able to read English, and, by his own testimony, knew the risk he ran in signing a blank printed form. Nevertheless he signed it. Clearly this was negligence. * * * And it was negligence which enabled Napco's representatives to perpetrate a fraud on the defendants, so that the rule might well be applied that, whenever one of two innocent persons must suffer by the acts of a third party, he who has enabled the third party to occasion the loss must sustain it. * * *"

The Amato case, although decided before Oregon adopted the Uniform Commercial Code, in actuality amounts to a rule of decision which has now become statutory law by the enactment of § 3–305(2) (c) of the Uniform Commercial Code.

The finding of the trial court that Burchetts were not guilty of negligence is not

supported by substantial evidence and must fall. We determine under these facts as a matter of law that both the Burchetts and the Beevers had a reasonable opportunity to obtain knowledge of the character or the essential terms of the instruments which they signed, and therefore appellant as a holder in due course took the instruments free from the defenses claimed by the appellees.

We have carefully considered the cases and authorities cited by counsel, in addition to our own independent research. However, the cases relied upon by appellees are clearly distinguishable, or arrive at a result which we decline to follow. We do take note, however, that Curtis v. Curtis, 1952, 56 N.M. 695, 248 P.2d 683, related to a property settlement between husband and wife in which the confidential relationship of the parties was of paramount importance, thereby resulting in the determination that the agreement was void ab initio. The case before us concerns different facts, circumstances and relationships under the Uniform Commercial Code; thus Curtis is not analogous.

Other points are raised, but, in view of our determination, need not be answered.

The judgments will be reversed and the cause is remanded to the district court with directions to dismiss appellees' complaints. It is so ordered.

NOBLE and MOISE, JJ., concur.