570 P.2d 1144

FIRST STATE BANK AT GALLUP, a
New Mexico Corporation,
Plaintiff-Appellee,

v.

R. C. CLARK, Defendant-Appellee,

v.

M. S. HORNE, Defendant-Appellant,
Third-Party Plaintiff and
Cross-Claimant,

v.

Harlow L. JONES, Third-Party
Defendant-Appellee,

v.

R. C. CLARK, Cross-Defendant.

No. 11338.

Supreme Court of New Mexico.

Nov. 3, 1977.

OPINION

EASLEY, Justice.

First State Bank of Gallup (First State), Plaintiff-Appellee sued M. S. Horne (Horne), Defendant-Appellant on a promissory note. The trial court granted summary judgment against defendant and we affirm.

*Facts*

Horne had executed a $100,000 note in favor of R. C. Clark which contained a restriction that the note could not be transferred, pledged or assigned without the written consent of Horne. As part of the transaction between Horne and Clark, Horne gave Clark a separate letter authorizing Clark to pledge the note as collateral for a loan of $50,000 which Clark anticipated making with First State. Clark did make the loan and pledged the note, which was accompanied by Horne's letter authorizing the note to be used as collateral. First State also called Horne to verify that he was in agreement that his note could be accepted as collateral. First State attempted to collect from Horne on Horne's note to Clark which had been pledged as collateral. Horne refused to pay and this suit resulted.

*Issues*

The issues raised on appeal include (1) whether the note was a negotiable instrument for purposes of Article 3 of the Uniform Commercial Code (U.C.C.) [§ 50A–3–101 et seq. N.M.S.A.1953] (this issue is a matter of first impression under New Mexico law); (2) if it is, whether First State qualifies as a holder in due course under the U.C.C.; (3) whether, if Article 3 does not apply to the instrument, the note was nevertheless negotiable as between the parties under ordinary contract principles; and (4) whether, under ordinary contract law, Horne is estopped to deny the note's validity.

Threet, Threet, Glass, King & Maxwell, David W. King, Albuquerque, for appellant.

Glascock, McKim & Head, William W. Head, Jr., Gallup, for appellees.

### Negotiable Instruments Under Article 3 of the U.C.C.

Article 3 of the U.C.C. defines a certain type of readily transferable instrument and lays down certain rules for the treatment of that instrument and rules concerning the rights, remedies and defenses of persons dealing with it.

▉ In order to be a "negotiable instrument" for Article 3 purposes the paper must precisely meet the definition set out in § 3–104, since § 3–104 itself states that, to be a negotiable instrument, a writing "must" meet the definition therein set out. Moreover, it is clear that in order to determine whether an instrument meets that definition *only the instrument itself* may be looked to, *not* other documents, even when other documents are referred to in the instrument. *Carper v. Kanawha Banking & Trust Co.*, W.Va., 207 S.E.2d 897 (1974); *Walls v. Morris Chevrolet, Inc.*, 515 P.2d 1405 (Okl.Ct.App.1973); *see Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583, 585 & 588 (10th Cir. 1976). As Hart & Willier, 2 Bender's U.C.C. Service, *Commercial Paper*, § 2.03[1] points out in its text and in footnote 3:

> The applicability of Article 3 must be determined from the instrument itself, without reference to other documents or oral agreements. The "four-corners test" is still applicable: the determination of negotiability under Article 3 must be made by inspecting only the instrument itself. . . .

> This is clear from the mandatory language of U.C.C. § 3–104, and from the following language from the Official Comment to U.C.C. § 3–105 found under the heading "Purposes of Changes": "The section is intended to make it clear that, so far as negotiability is affected, the conditional or unconditional character of the promise or order is to be determined by what is expressed in the instrument itself. . . ."

We recognize the Official Comments to the U.C.C. as persuasive, though they are not controlling authority. *Burchett v. Allied Concord Financial Corp.*, 74 N.M. 575, 396 P.2d 186 (1964).

Section 3–104 thus requires that, in order to be a negotiable instrument for Article 3 purposes, one must be able to ascertain without reference to other documents that the instrument:

> (a) [is] signed by the maker or drawer; and (b) contain[s] an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by [Article 3]; and (c) [is] payable on demand or at a definite time; and (d) [is] payable to order or to bearer.

*Carper, supra, Walls, supra.*

▉ The note in question here failed to meet the requirements of § 3–104, since the promise to pay contained in the note was not unconditional. Moreover, the note was expressly drafted to be non-negotiable since it stated:

> This note may not be transferred, pledged, or otherwise assigned without the written consent of M. S. Horne.

These words, even though they appeared on the back of the note, effectively cancelled any implication of negotiability provided by the words "Pay to the order of" on the face of the note. Notations and terms on the back of a note, made contemporaneously with the execution of the note and intended to be part of the note's contract of payment, constitute as much a part of the note as if they were incorporated on its face. *Williams v. Wisowaty*, 2 Ill.App.3d 400, 276 N.E.2d 424 (1971).

▉ Counsel argue that § 3–119 applies and allows incorporating other documents to remove the defects on the face of the instrument. They argue that Horne's separate letter to Clark authorizing the pledging of the note to First State removed the conditions in the note and the express prohibition therein against its negotiability and rendered the note negotiable for Article 3 purposes. This is incorrect. An instrument which in and of itself does not meet the requirements of § 3–104 cannot be made negotiable for Article 3 purposes by refer-

ence to another document which purports to cure the defects in the note's negotiability. *Carper, supra, Walls, supra.*

Section 3–119 and the Official Comments thereto go only to clarifying what the effect is of referring to other documents which may affect negotiability where such reference is on the face of *an otherwise negotiable instrument.* See U.C.C. § 3–119, Official Comment, Purposes. Neither § 3–119 nor any other U.C.C. section applies to allow the use of other documents to correct defects in otherwise *non-negotiable* instruments.

■ The whole purpose of the concept of a negotiable instrument under Article 3 is to declare that transferees in the ordinary course of business are only to be held liable for information appearing in the instrument itself and will not be expected to know of any limitations on negotiability or changes in terms, etc., contained in any separate documents. The whole idea of the facilitation of easy transfer of notes and instruments requires that a transferee be able to trust what the instrument says, and be able to determine the validity of the note and its negotiability from the language in the note itself. 2 Bender's U.C.C. Service *supra,* § 2.03[1]. *See Carlos v. Fancourt,* 5 Term Rep. 482 (1794). Section 3–119 and comments thereunder serve to clarify that a holder of an instrument which refers to another document need not inform himself of conditions in that document unless he has notice of the particular limitation contained therein. Thus, as the comment clarifies, a holder can remain a holder in due course in spite of a reference to another document on the face of an *otherwise negotiable* instrument. Section 3–119 in no way implies or states, and neither do any comments thereunder, that an instrument non-negotiable on its face can be cured by reference to a document removing the defect which renders the instrument non-negotiable. *Carper, supra, Walls, supra.*

Since the note in question is not negotiable for Article 3 purposes, First State cannot be a holder in due course under Article 3, *Carper, supra,* and we need not discuss that issue.

## Negotiable Instruments Under Ordinary Contract Law

■ Even though a note or instrument is not a "negotiable instrument" for Article 3 purposes, it may nevertheless be negotiable between the parties involved under ordinary contract law. *Frank v. Hershey National Bank,* 269 Md. 138, 306 A.2d 207 (1973). The Official Comments to § 3–119 which counsel have cited recognize this principle. E. G., U.C.C. § 3–119, Official Comment 3. The comments assert that even where an instrument *is* negotiable for Article 3 purposes the parties in any transaction are always bound by the totality of documents which are intended to form a contract between them, not just the terms set forth in one which happens to be a negotiable instrument. The same is true when the instrument does not meet Article 3 requirements. *Frank, supra.*

■ As between Clark and Horne, Clark had a contract right to pledge Horne's note to Clark as security. Clark had a contract right to negotiate the note. Thus the note was negotiable for Clark's limited purposes even though it was not an Article 3 negotiable instrument. Before accepting Clark's pledge, First State verified by direct conversation with Horne that Clark had Horne's authority to pledge the note as the letter permitted. Horne in no way suggested that he had any offsetting defense to the validity of the note. Horne failed to notify First State that Clark had given him an offsetting note which was intended to nullify the effect of Horne's note to Clark should Clark default on his loan obligation secured by that note.

U.C.C. § 3–104, Official Comment 2 states in part:

While a writing cannot be made a negotiable instrument within this Article by contract or by conduct, nothing in this section is intended to mean that in a particular case a court may not arrive at a result similar to that of negotiability by finding that the obligor is estopped by his

conduct from asserting a defense against a bona fide purchaser. Such an estoppel rests upon ordinary principles of the law of simple contract.

We have long recognized the possibility of estoppel in appropriate cases. *E. g., Dale J. Bellamah Corporation v. City of Santa Fe*, 88 N.M. 288, 540 P.2d 218 (1975); *Tome Land & Improvement Co. v. Silva*, 83 N.M. 549, 494 P.2d 962 (1972); *Porter v. Butte Farmers Mutual Insurance Company*, 68 N.M. 175, 360 P.2d 372 (1961); *Treadwell v. Henderson*, 58 N.M. 230, 269 P.2d 1108 (1954); *Martinez v. Cook*, 56 N.M. 343, 244 P.2d 134 (1952); *Chambers v. Bessent*, 17 N.M. 487, 134 P. 237 (1913). These cases clarify that equitable estoppel results from a course of conduct which precludes one from asserting rights he otherwise might assert against one who has in good faith relied upon such conduct to his detriment.

In the instant case the evidence clearly indicates that First State relied on the validity of Horne's note to Clark as a pledge to secure Clark's obligation to First State. First State not only required the pledge before loaning Clark the money, but was concerned enough to solicit verbal assurances from Horne prior to making the loan that the note was valid. Horne knew he had an offsetting note from Clark which would in effect invalidate or cancel his obligation under the pledged note, but he failed to tell First State the true state of affairs. First State relied in good faith on Horne's conduct—his failure to reveal material facts—to First State's detriment. As a matter of law Horne cannot assert any defenses he has against First State arising from the material facts he failed to reveal. Thus as a matter of law he cannot defend against the prima facie case made by First State and since there is no genuine issue as to any material fact regarding the genuineness of Horne's note and letter, summary judgment for First State against Horne was proper. *Pharmaseal v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977); *Runyan v. Jaramillo*, 90 N.M. 629, 567 P.2d 478 (1977); *Skarda v. Skarda*, 87 N.M. 497, 536 P.2d 257 (1975); *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

The summary judgment of the district court is hereby affirmed for the stated reasons, although we reject the trial court's conclusion that the note in question was a negotiable instrument as contemplated by Article 3.

IT IS SO ORDERED.

SOSA and FEDERICI, JJ., concur.