This is a case governed by the provision of the Uniform Commercial Code, §§ 7-1-101 et seq., Code of Ala. 1975.
Holsonback, the defendant below, appeals from a judgment entered against him by the Circuit Court of Marshall County. The issues presented for review are: (1) whether the trial court erred in finding a draft issued by Holsonback to be a negotiable instrument, (2) whether the trial court erred in failing to give Holsonback a judgment for possession of an automobile certificate of title in the possession of plaintiff, First State Bank of Albertville.
We find no error and affirm.
A review of the record reveals the following facts:
One Higgins was a dealer in used automobiles. In 1978, Higgins purchased a 1977 Corvette automobile. Higgins paid for this automobile by giving the seller a draft drawn by Higgins on the First State Bank of Albertville in the amount of $8,115. This draft along with the certificate of title to the Corvette was later presented by the seller to the First State Bank for payment.
Meanwhile, Higgins sold the Corvette to Holsonback. Holsonback paid for the automobile by giving Higgins a draft drawn by Holsonback on the Albertville National Bank in the amount of $8,225. It is the negotiability of this draft that is in issue in this case.
When Higgins' draft was presented to the First State Bank for payment, First State Bank called Higgins and requested that he pay his draft. Higgins did so by transferring the Holsonback draft to the First State Bank. First State Bank then paid the original seller of the Corvette $8,115 and paid Higgins $110 in cash. These payments were made against the Holsonback draft.
First State Bank then forwarded the Holsonback draft along with the Corvette's certificate of title, a mileage statement, and Higgins' bill of sale to the Albertville National Bank for payment.
Upon receiving the Holsonback draft, the Albertville National Bank requested that Holsonback pay it. Holsonback, after examining the certificate of title and discovering the absence of a necessary signature, refused to pay the draft. Specifically, a former owner upon selling the automobile failed to sign the automobile's certificate of title. The draft and accompanying documents were returned to the First State Bank.
The First State Bank was advised of the defect in the certificate of title. After having the defect cured, the First State Bank for a second time presented the draft for payment. Holsonback again refused to pay his draft.[1] The draft and documents were returned to the First State Bank. First State Bank then sued Holsonback on his draft.
At the time of trial, Holsonback was in possession of the automobile.
The draft in question in this case was drawn on a form printed on an envelope. This type of draft is apparently used by car dealers and banks to facilitate the transfer of certificates of title and other relevant documents from seller to buyer. As noted above, this envelope when presented to Holsonback contained the Corvette's certificate of title, a mileage statement, and a bill of sale.
The form of this draft does not differ in any material way from a standardized check form except for the presence of the following words: "ENCLOSED-TITLE ON *Page 383 
77 CHEV. VETT. FREE OF ALL LIENS AND ENCUMBRANCES." Upon cross-examination, the president of the First State Bank testified to the effect that these words as used by the banking and automobile businesses in the southeastern United States are understood to mean that the automobile buyer's obligation to pay the seller for the automobile is conditioned upon the seller furnishing proper title to the automobile.
It is Holsonback's contention through able counsel that the above understanding is a usage of trade in the banking and automobile businesses and that the words, "ENCLOSED-TITLE ON 77 CHEV. VETT. FREE OF ALL LIENS AND ENCUMBRANCES," when viewed in light of this usage of trade render the promise or order to pay money embodied in the draft conditional. In other words, Holsonback argues that facts extrinsic to the draft, i.e., the purported usage of trade, must be considered in determining whether the draft's order or promise to pay is conditional or unconditional.
At the outset, we note that for any writing to be a negotiable instrument under Article III of the Uniform Commercial Code it must contain, among other things, "anunconditional promise or order to pay a sum certain in money." (Emphasis supplied.) § 7-3-104 (1)(b), Code of Ala. 1975. A writing containing a conditional promise or order cannot be a negotiable instrument under § 7-3-104 (1)(b).
Negotiability is determined from the face, the four-corners, of the instrument without reference to extrinsic facts. FirstState Bank at Gallup v. Clark, 91 N.M. 117, 570 P.2d 1144
(1977); Bender's U.C.C. Service, Hart Willier, Commercial Paper § 2.03 (1). The conditional or unconditional character of the promise or order is to be determined by what is expressed in the instrument itself. Booker v. Everhart, 294 N.C. 146,240 S.E.2d 360 (1978); First State Bank at Gallup v. Clark, supra;Walls v. Morris Chevrolet, Inc., 515 P.2d 1405 (Okla. 1973); §7-3-105, Official Comment, Code of Ala. 1975; § 7-3-119, Official Comment 5, Code of Ala. 1975; 2 Anderson on theUniform Commercial Code § 3-104:4 and § 3-105:5 (1971). The above indicates that in order for a promise or order to be conditional an express condition to payment must be stated on the face of the instrument. § 7-3-105, Official Comment, Code of Ala. 1975; Anderson § 3-105:5, supra. See, § 7-3-105 (2), Code of Ala. 1975.
Additionally, we note § 7-3-105 (1)(a), Code of Ala. 1975, provides "a promise or order otherwise unconditional is not made conditional by the fact that the instrument is subject to implied or constructive conditions." Assuming without deciding that the purported usage of trade is an implied or constructive condition inherent in a contract for the sale of an automobile, § 7-3-105 (1)(a) does not allow such a condition to be read into an instrument to destroy its negotiability.
There is nothing on the face of the draft before us that states payment of the draft is conditioned upon the delivery of proper title to the automobile. The words, "ENCLOSED-TITLE ON 77 CHEV. VETT. FREE OF ALL LIENS AND ENCUMBRANCES," appear to be and the trial court so found them to be merely a description of the contents of the envelope. See, Wiley v. Peoples Bank Trust Co., 438 F.2d 513 (5th Cir. 1971). Stated differently, when viewed without reference to extrinsic facts, i.e., the purported usage of trade, there is nothing on the face of the draft that makes payment conditional. For this reason, we find that the trial court did not err in finding the draft to be a negotiable instrument.
Holsonback also contends the trial court erred in failing to find him entitled to possession of the automobile's certificate of title.
Section 7-4-208 (1), Code of Ala. 1975, provides in pertinent part:
 (1) A bank has a security interest in an item and any accompanying documents or the proceeds of either:
 . . . . . *Page 384 
(c) If it makes an advance on or against the item.
As indicated above, the draft was printed on an envelope. The automobile's certificate of title was enclosed in that envelope. The certificate of title is a document accompanying the draft. See § 7-4-104 (1)(g).
First State Bank has made an advance against the draft — $8,115 to the original seller of the automobile and $110 to Higgins.
Under § 7-4-208 (1)(c), First State Bank having made an advance against a draft has a security interest in that draft and any accompanying documents. This security interest continues and gives the bank the right to retain possession of the draft and accompanying documents up until the time the draft is finally paid. § 7-4-208 (3), Code of Ala. 1975; 3Anderson on the Uniform Commercial Code § 4-208:6 (1971).
We find the trial court did not err in failing to render a judgment entitling Holsonback to possession of the certificate of title.
For the above stated reasons, this case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] We note Holsonback's stated reason for refusing to pay his draft a second time involves a check given him by Higgins. This check was twice dishonored for insufficient funds.