MURDOCK, Justice.
 

 James Phillip Foster, as trustee, and Janie W. Foster, as sole beneficiary, of the James D. Foster Family Trust (“the Fosters”), appeal from an order of the Jefferson Circuit Court dismissing as beyond the applicable statute of limitations their complaint against Hacienda Nirvana, Inc. (“Hacienda”), based on Hacienda’s failure to pay on a promissory note. We affirm.
 

 I. Facts and Procedural History
 

 Janie W. Foster, the widow of James D. Foster and the personal representative of his estate, agreed to sell her late husband’s herd of Peruvian Paso horses to Hacienda. On February 3, 1993, the parties executed a purchase agreement for the horses. On the same date, along with the purchase agreement, Janie Foster and Hacienda executed a document entitled “Promissory Note,” in which Hacienda promised to pay Janie Foster $200,000 for the horses by the final due date of February 1, 1999 (“the promissory note”). The promissory note provided, in pertinent part:
 

 “For the value received, Hacienda Nirvana, Inc. (‘Maker’)[,] who reside[s] at P.O. Box 617, Selma, Alabama 36702, promises to pay to the order of the Estate of James D. Foster (‘Payee’), who resides at 1818 Hummingbird Lane, Birmingham, Alabama 35226, the sum of Two Hundred Thousand Dollars ($200,-000.00) with interest only from August 1, 1993, through December 31, 1993, which will be payable on the first of each month commencing on August 1, 1993 with a payment of $1,333.33 and payable on the first day of each month thereafter through December 1, 1993. The unpaid
 
 *1258
 
 principal and accrued interest shall be payable in monthly installments of $4,000.00 in the legal currency of the United States of America, beginning on January 1, 1994, and continuing until February 1, 1999 (the ‘due date’), at which time the remaining unpaid principal and interest shall be due in full. All payments shall be applied first in payment of accrued interest and any remainder in payment of principal. An amortization table and pay schedule is listed as ‘Attachment A.’
 

 “Maker shall have the right to make advance payments to reduce the principal of this note.
 

 “Maker hereby waives all right of exemption under the Constitution and Laws of Alabama, and agrees to pay the cost of collection, including a reasonable attorney’s fee, if obligation is not paid in accordance with the terms of this note.
 

 “Demand, protest and notice of protest, and all requirements necessary to hold them liable, are hereby waived by the Maker.
 

 “This note is given, executed and delivered under my hand and seal this 3rd day of February, 1993.”
 

 The parties’ signatures are contained below the statement that the note “is given, executed and delivered under my hand and seal this 3rd day of February, 1993,” and next to each signature is the abbreviation “L.S.”
 
 [1]
 

 James D. Foster’s will established a testamentary trust that named his son James Phillip Foster (“Foster”) as the trustee and Janie W. Foster as the sole beneficiary of the trust. In her capacity as the personal representative of her husband’s estate, Janie W. Foster assigned the promissory note from Hacienda to the trust.
 

 Hacienda admits that it started missing payments on the promissory note in 1994. It made several payments in 1995 and 1996, but it made no payments after 1996. The note did not contain an acceleration clause, so the note could not be called sooner than the due date of February 1, 1999. On November 18, 2005, six years and nine months after the note’s due date, the Fosters filed an action in Jefferson Circuit Court against Hacienda based on its failure to pay the note in full.
 

 The action was tried without a jury on July 16, 2007. The trial court entered an order on August 22, 2007, determining that Hacienda had “failed to make an overwhelming number of payments” and assessed preliminary damages against Hacienda, basing the amount in part on figures provided in the purchase agreement. On October 3, 2007, the trial court entered another order asking the parties to brief the issue of the applicable statute of limitations on the Fosters’ action. Thereafter, on October 23, 2007, the trial court entered a final order in which it concluded that the promissory note was a negotiable instrument governed by Article 3 of Alabama’s Uniform Commercial Code. The trial court noted that § 7-3-118, Ala.Code 1975, establishes a six-year statute of limitations for negotiable instruments. The trial court thus concluded that “ § 7-3-118 bars any claim on the note,” and it dismissed the Fosters’ claim against Hacienda on the promissory note.
 

 The Fosters moved to alter, amend, or vacate the judgment, but the trial court denied their motion. The Fosters appeal the trial court’s determination that the six-year statute of limitations applies to their claim on the promissory note.
 

 
 *1259
 

 II. Standard, of Revieiv
 

 The trial court’s resolution of the issue involved determining the nature of the promissory note based on the language of the note. “If a contract can be interpreted without going beyond the four corners of the document, the trial court’s resolution of the question of law is accorded no presumption of correctness, and this Court’s review is
 
 de novo.” Exxon Mobil Corp. v. Alabama Dep’t of Conservation & Natural Res.,
 
 986 So.2d 1093, 1101 (Ala. 2007). Its determination also turned on the interpretation and applicability of statutory provisions. “The trial court’s interpretation of [a statute] involves a question of law; it is reviewed de novo by an appellate court, without any presumption of correctness.”
 
 Simcala, Inc. v. American Coal Trade, Inc.,
 
 821 So.2d 197, 200 (Ala. 2001).
 

 III. Analysis
 

 Section 7-3-118(a), Ala.Code 1975, provides that
 

 “[e]xcept as provided in subsection (e),[
 
 2
 
 ] an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.”
 

 The trial court concluded that the promissory note was a negotiable instrument and that § 7-3-118 provided the applicable statute of limitations for the Fosters’ action on the promissory note.
 

 Section 6-2-33, Ala.Code 1975, states that “[a]ctions founded upon any contract or writing under seal” must be commenced within 10 years. The Fosters contend that the promissory note is a contract under seal and that, therefore, the applicable statute of limitations for his action is 10 years rather than 6 years as the trial court concluded. The Fosters base their argument squarely on the facts that the promissory note provides that it was “executed and delivered under [Hacienda’s] hand and seal this 3rd day of February 1993,” and that the abbreviation “L.S.” appears next to the parties’ signatures.
 

 The Fosters’ argument assumes that the 10-year statute of limitations must apply here if the promissory note is a contract under seal. Section § 6-2-2(e), Ala.Code 1975, provides, however, that “[t]his chapter [§ 6-2-1 et seq., Ala.Code 1975,] shall not apply to negotiable instruments which are governed by Sections 7-3-118 and 7-4-111.” Thus, if the promissory note is a negotiable instrument (see discussion,
 
 infra
 
 ), § 6-2-2(e) clearly mandates that the six-year statute of limitations of § 7-3-118 must apply to the Fosters’ claim on the promissory note, regardless of whether the note is also a contract under seal.
 

 The Fosters also contend that § 6-2-2(e) does not apply in this case because the promissory note was executed on February 3, 1993, and § 6-2-2(e) became effective on January 1, 1996. Statutes generally are not applied retrospectively, the Fosters observe, and, therefore, they conclude, § 6-2-2(e) cannot apply to their action. In making this argument, however, the Fosters misunderstand the nature of a statute of limitations. As this Court explained in
 
 Street v. City of Anniston,
 
 381 So.2d 26 (Ala.1980):
 

 “It is true as a general rule that statutes will not be construed to have retrospective effect unless the language of the statute expressly indicates the legis
 
 *1260
 
 lature so intended. ‘Remedial statutes,’ or those relating to remedies or modes of procedure, which do not create new rights or take away vested ones, are not within the legal conception of ‘retrospective laws,’ however, and do operate retrospectively, in the absence of language clearly showing a contrary intention.
 
 A statute of limitations has generally been viewed as a remedial statute, and the statute of limitations in effect at the time the suit is filed, as opposed to one in effect at the time of the accrual of the cause of action, has been held to apply unless the later statute clearly states the contrary.
 
 This is true whether the later statute extends or limits the time within which a cause of action may be brought, for it has frequently been held that the legislature can establish a new limitation where none existed before and make it applicable to a cause of action against which there was no such statute when the right was created, and it may also so change an existing statute and shorten periods of limitation, provided a reasonable time is allowed for the action to be brought.”
 

 381 So.2d at 29 (citations omitted and emphasis added). Thus, unless the language of § 7-3-118 indicates that it should not be applied retrospectively, it applies to all actions concerning negotiable instruments that are filed after its effective date of January 1,1996.
 

 The plaintiff in
 
 Barrett v. McPherson,
 
 990 So.2d 430 (Ala.Civ.App.2008), made the same argument to the Court of Civil Appeals that the Fosters make here, and after noting and quoting our decision in
 
 Street,
 
 that court correctly observed:
 

 “Subsection (e) of § 6-2-2, which was enacted as § 4 of Act No. 95-668, Ala. Acts 1995, and which became effective on the same date as § 7-3-118, reflects the legislature’s intent; the preamble to Act No. 95-668 indicates that the legislature intended to amend § 6-2-2 ‘regarding the applicability of the chapter concerning limitations of actions to specify the chapter shall not apply to certain negotiable instruments.’ Clearly, the legislature intended that § 7-3-118 apply to actions filed after January 1, 1996.”
 

 990 So.2d at 434. It is undisputed that the Fosters filed their action on November 18, 2005, well after the effective date of § 7-3-118. Consequently, if the promissory note is a negotiable instrument, the six-year statute of limitations provided in § 7-3-118 applies to the Fosters’ cause of action.
 

 With certain exceptions not applicable here, § 7-3-104(a), Ala.Code 1975, provides that a “negotiable instrument” is
 

 “an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
 

 “(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
 

 “(2) Is payable on demand or at a definite time; and
 

 “(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.”
 

 § 7-3-104(a), Ala.Code 1975.
 

 We observe that the note in this case was a promise to pay “a fixed amount.” The principal amount owed, $200,000, is
 
 *1261
 
 recited on the face of the note. The face of the note also provides for interest-only payments of $1,838.33 per month from August 1, 1993, through December 31, 1993, and for payments of principal and interest of $4,000 thereafter until February 1,1999, at which time, the note states, any unpaid principal and interest will be due. The amortization schedule constituting “Attachment A” to the note reflects an interest rate of eight percent and shows a schedule of payments through March 1, 1997.
 
 [3]
 
 As the trial court further observed:
 

 “The note signed by [Hacienda] fits [the] criteria [of § 7-3-104(a) ]. It is payable ‘to the order of the Estate of James D. Foster....’ It is payable at definite times, with the final due date being identified as February 1, 1999. Absent from the note is any other ‘undertaking or instruction’ by [Hacienda] to do anything else in addition to the obligation to make payments. Finally, there is nothing in the note that explicitly declares that it is in any way non-negotiable.”
 

 The Fosters contend that § 7 — 3—104(d), Ala. Code 1975, specifically exempts the promissory note from the definition of a negotiable instrument. That subsection provides that
 

 “[a] promise or order other than a check is
 
 not an insinment if,
 
 at the time it is issued or first comes into possession of a holder,
 
 it contains a conspicuous statement, however expressed, to the effect that the promise
 
 or order is not negotiable or
 
 is not an instrument governed by this article.”
 

 § 7-3-104(d), Ala.Code 1975 (emphasis added). The Fosters contend that the statement on the promissory note that it was executed “under ... seal” constitutes a “conspicuous statement” that it is not a negotiable instrument.
 

 The Fosters’ argument incorrectly assumes that a contract under seal cannot also be a negotiable instrument. Though that was true at one time, it is no longer the case.
 

 “Prior to the adoption in this state of the Uniform Negotiable Instruments Law (Code 1907, §§ 4958-5149; Code 1923, §§ 9029-9222),[
 
 4
 
 ] this court had always recognized the distinctions impressed by the common law and the Statute of Anne on instruments given under seal, and, though a promise to pay money were in the exact form of a negotiable promissory note, it was held that its execution under the seal of the maker destroyed its character in law as a promissory note, and made of it an obligation legally different and distinct, a
 
 specialty,
 
 usually called a bill single or writing obligatory, carrying a conclusive presumption of a valid consideration for the obligation to pay, and not negotiable under the principles of the law merchant, or the provisions of the Statute of
 
 *1262
 
 Anne, making promissory notes negotiable. ...
 

 [[Image here]]
 

 “The Uniform Negotiable Instruments Law (section 6. subd. [4]; Code 1907, § 4963; Code 1923, § 9034, subd. [4]) provides that the validity and negotiable character of an instrument are not affected by the fact that it bears a seal.
 

 [[Image here]]
 

 [[Image here]]
 

 “So far as the substance and effect of the instrument is concerned, there remains no distinction between a sealed and an unsealed promissory note. The sealed note is no longer a specialty with peculiar incidents, but is in fact a negotiable promissory note ....”
 
 [5]
 

 Ex parte First Nat’l Bank of Ozark,
 
 212 Ala. 274, 275, 102 So. 371, 371-72 (1924). In other words, simply because an instrument is a contract under seal does not mean it cannot be negotiable.
 

 Moreover, the kind of “conspicuous statement” that § 7-3-104(d) contemplates is more specific than any of the language in the promissory note.
 

 “Subsection (d) allows exclusion from Article 3 of a writing that would otherwise be an instrument under subsection (a) by a statement to the effect that the writing is not negotiable or is not governed by Article 3. For example, a promissory note can be stamped with the legend NOT NEGOTIABLE. The effect under subsection (d) is not only to negate the possibility of a holder in due course, but to prevent the writing from being a negotiable instrument for any purpose.”
 

 Official Comment ¶ 3, § 7-3-104, Ala.Code 1975; see, e.g.,
 
 Morgan v. Farmers & Merchants Bank,
 
 856 So.2d 811, 817-18, 813 (Ala.2003) (stating that a certificate of deposit was not a “negotiable instrument” in part because it contained “a conspicuous statement that it was not negotiable,” namely, the caption “Money Market Certificates (Non-negotiable)”). The statement that the note was executed under seal was not sufficient to exempt it from the provisions of § 7-3-104(a).
 

 Finally, the Fosters contend that the promissory note is governed by the purchase agreement, so, they argue, it cannot be a negotiable instrument. The Fosters observe that § 7-3-106, Ala.Code 1975, provides:
 

 “(a) Except as provided in this section, for the purposes of Section 7-3-104(a), a promise or order is unconditional unless it states (i) an express condition to payment, (ii)
 
 that the promise or order is subject to or govern,ed by another writing, or (Hi) that rights or obligations with respect to the promise or order are stated in another writing.
 
 A reference to another writing does not of itself make the promise or order conditional.”
 

 (Emphasis added.) The Fosters aver that the purchase agreement had to be consulted to establish the rights and obligations of each party, specifically with regard to the interest rate, what, if any, interest-only payments are contemplated, the payment schedule, the allocation of payments between principal and interest, the applicable late charges, and whether those charges are to be deemed liquidated damages, the
 
 *1263
 
 borrower’s right to prepay without penalty, and the events of default. The Fosters argue that the promissory note was dependent upon the purchase agreement and, therefore, that the promissory note did not constitute an unconditional promise and, accordingly, was not a negotiable instrument.
 

 We first note that it is not necessary to consult the purchase agreement to determine the interest rate, what interest-only payments are contemplated, and the payment schedule. The note, on its face, provides for interest-only payments of $1,333.33 per month from August 1, 1993, through December 31, 1993. Insofar as a payment schedule is concerned, the note states that payments of principal and accrued interest in monthly installments of $4,000 are to be paid beginning January 1, 1994, and ending February 1, 1999. The note then provides that all unpaid principal and interest shall be due in full on February 1, 1999. Further, an amortization schedule reflecting an annual interest rate of 8% and setting forth a schedule of payments through March 1, 1997, is attached to the note as “Attachment A.” In addition, the purchase agreement contains no allocation of payments as between principal and interest; such an allocation is, however, stated in the amortization schedule, at least through March 1, 1997, and, of course, may be computed mathematically beyond that date.
 
 [6]
 
 We also note that § 7-3 — 106(b) provides that a reference in a note to another writing for a statement of rights regarding prepayment does not deprive the note of its unconditionality.
 

 Moreover, the Fosters ignore the fact that § 7-3-106 explicitly states that “a promise or order is unconditional unless
 
 it states ...
 
 that the promise or order is subject to or governed by another writing ....” (Emphasis added.) “Negotiability is determined from the face, the four-corners, of the instrument without reference to extrinsic facts.”
 
 Holsonback v. First State Bank of Albertville,
 
 394 So.2d 381, 383 (Ala.Civ.App.1980), cert. denied, 394 So.2d 384 (1981).
 
 [7]
 
 The promissory note itself is devoid of any mention of the pur
 
 *1264
 
 chase agreement. Rather, the terms expressed within the four corners of the note itself obligate the maker of the note unconditionally to pay “fixed amounts” “to the order” of the estate of James D. Foster “at definite times” without other “undertakings or instructions” by the promisor. Because it contains all of the characteristics of a negotiable instrument as described in § 7-3~104(a) and it stands on its own without reliance on another document, the promissory note is a negotiable instrument.
 

 As noted above, § 7-3-118, Ala.Code 1975, provides a six-year statute of limitations on claims concerning negotiable instruments. The Fosters filed their claim on the promissory note on November 18, 2005, six years and nine months after the final payment was due on the note. Accordingly, their claim was barred by the statute of limitations.
 

 IV. Conclusion
 

 The trial court properly determined that the promissory note was a negotiable instrument, and it correctly applied the six-year statute of limitations in § 7-3-118, Ala.Code 1975, to the Fosters’ claim on the promissory note. Therefore, the trial court’s judgment is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . ''L.S.” is an abbreviation for
 
 locus sigilli,
 
 which literally means "[l]he place of the seal.”
 
 Black's Law Dictionary
 
 960 (8th ed.2004).
 

 [2]
 

 . Subsection (e) concerns the statute of limitations for certificates of deposit and therefore has no application here.
 

 [3]
 

 . It is unclear whether one or more additional pages of the amortization schedule were originally attached to the note; any such additional pages are missing from the record before us.
 

 [4]
 

 . The Uniform Negotiable Instruments Law, "[t]he first codification of negotiable instruments law in the United States,” was drafted by the National Conference of Commissioners on Uniform State Laws ("NCCUSL") in 1896 and "was adopted by all states and territories of the United States in the early 1900s.” Mark B. Greenlee and Thomas J. Fitzpatrick IV,
 
 Reconsidering the Application of the Holder in Due Course Rule to Home Mortgage Notes,
 
 41 UCC L.J. 3 Art. 2 (2009). The NCCUSL and the American Law Institute drafted the Uniform Commercial Code ("UCC”) in part as a replacement for the Uniform Negotiable Instruments Law. See
 
 id.
 
 The UCC superseded the Uniform Negotiable Instruments Law in Alabama on December 31, 1966.
 

 [5]
 

 . The Court went on to state in
 
 Ex parte First National Bank of Ozark,
 
 212 Ala. 274, 275, 102 So. 371, 372 (1924), that the only difference between contracts under seal and other promissory notes was "the limitation of action thereon, which, as to sealed instruments, is extended to ten years. Code 1923, § 8943.” As will be explained
 
 infra,
 
 however, § 6-2-2(e), Ala.Code 1975, renders obsolete the suggestion that a 10-year statute of limitations always applies to an action on a sealed instrument.
 

 [6]
 

 . By discussing and rejecting the Fosters’ assertion that it is necessary to consult the purchase agreement to establish the rights and obligations of each party with respect to the foregoing items, we do not imply that these items must be expressed in an instrument in order for that instrument to be a "negotiable instrument." The criteria for what constitutes a "negotiable instrument” are those described in § 7-3-104(a), Ala.Code 1975. Our discussion of the foregoing items is for the purpose of addressing the Fosters' argument that it is necessary to consult a writing other than the promissory note to discern these items and that, therefore, according to the Fosters, the note does not meet the definition of unconditionality in § 7-3-106.
 

 It is true that it is necessary to consult the purchase agreement in order to discern the parties’ agreement, if any, as to whether there are to be late charges, whether such late charges are to be treated as liquidated damages, and the events of default, if any. That purchase agreement, therefore, is relevant in a lawsuit, such as this one, between Hacienda and the Fosters. That fact, however, does not deprive the note of its negotiable character. The terms required of a "negotiable instrument" by § 7-3-104(a) are present in the instrument at issue, and that instrument is and would be negotiable to a third party based on those terms, i.e., without the inclusion of the additional terms that are in the purchase agreement between the Fosters and Hacienda.
 

 [7]
 

 . See § 7-3-106, Ala.Code 1975, Official Comment ¶ 1 (providing the following examples of statements that would deprive a note of its unconditionality for purposes of § 7-3-104: "1. ‘This note is subject to a contract of sale dated April 1, 1990 between the payee and maker of this note.’ 2. 'This note is subject to a loan and security agreement dated April 1, 1990 between the payee and maker of this note.’ 3. ’Rights and obligations of the parties with respect to this note are stated in an agreement dated April 1, 1990 between the payee and maker of this note.' ”). See also
 
 *1264
 
 1A Thomas M. Quinn,
 
 Quinn’s Uniform Commercial Code Commentary and Law Digest,
 
 § 3-105[A] (2002) (stating
 
 that
 
 ”[t]he conditional or unconditional character of the promise or order is to be determined by what is expressed in the writing itself”);
 
 Schmuckie v. Alvey,
 
 758 S.W.2d 31, 33 (Ky.1988) (noting that "[t]he determination of whether an instrument is unconditional must be made from the content of the instrument itself”); and
 
 First State Bank at Gallup v. Clark,
 
 91 N.M. 117, 119, 570 P.2d 1144, 1146 (1977) (observing that "[i]t is clear that in order to determine whether an instrument meets [the] definition [of a 'negotiable instrument’] only the instrument itself may be looked to, not other documents, even when other documents are referred to in the instrument”).