WILLIAM G. STOCKWELL AND MARILYN A. STOCKWELL *v.* BLOOMFIELD STATE BANK

[No. 1-277A23. Filed September 22, 1977.]

*Thomas A. Berry, Ferguson, Berry, Ferguson & Smith*, of Bloomington, for appellants.

*Michael J. Spencer, Spencer & Spencer*, of Bloomington, for appellee.

LYBROOK, J.—William G. Stockwell and Marilyn Stockwell, defendants-appellants, bring this appeal following a judgment against them in the sum of $8,240 plus interest and attorney's fees of $500.

The action was initiated when the Bloomfield State Bank (Bank), plaintiff-appellee, filed its complaint on a promissory note executed by the Stockwells and Donald and Natalie Carty.

The facts most relevant to this appeal indicate that Donald Carty had originally attempted to borrow $10,000 from Bank in 1971. The loan had been refused due to lack of security. Upon obtaining the signatures of the Stockwells the loan was approved and the original note was executed by the above four parties in November, 1971. The $10,000 was delivered to Donald Carty.

In November, 1972, the original note came due and was renewed in the sum of $9,000 by the same four parties. In May, 1973, the second note matured and was renewed by the same parties in the sum of $8,240. The third note matured in September, 1973, and was neither paid nor renewed.

The Bank notified the Stockwells that it expected payment from them, and when no payments were made the Bank employed Spencer and Spencer, Attorneys, to collect the note on a contingent fee arrangement.

In January, 1974, the complaint was filed against the Stockwells. Approximately two weeks later William Stockwell tendered the full amount of principal and interest demanded by the complaint. A disagreement arose in regard to the amount of

attorney's fees due under the note and the Bank refused to accept payment of principal and interest without the attorney's fees.

In September, 1974, the Stockwells filed a counterclaim alleging *inter alia*, malicious prosecution, abuse of process and tender of payment. A trial to the court resulted in the above mentioned verdict on Bank's claim and a dismissal of the Stockwells' counterclaim.

Upon the above facts the Stockwells present the following issues for review:

(1) Were the Stockwells accommodation makers to the notes?

(2) Must the Bank pay the proceeds of the loan jointly to all makers of a note?

(3) Can the defense of impairment of collateral be asserted to discharge the Stockwells?

(4) Was Stockwells' tender of payment sufficient to cut off all further liability?

(5) Is the verdict supported by sufficient evidence?

(6) Did the trial court improperly dismiss Stockwells' counterclaim?

Prior to any discussion of the issues it must be noted that the judgment in the case at bar was rendered by Special Judge Stephen M. Sherman, who was appointed pursuant to Ind. Rules of Procedure, Trial Rule 53.1 and 53.2. The decision was therefore rendered on the record and transcript of the evidence as it had been heard by Judge Sherman's predecessor. It is the law in Indiana that when a judgment is rendered entirely on documents or stipulations, the appellate courts are in an equal position with the trial court in determining the weight of the evidence on appeal. *Farmers & Merchants State Bank v. Feltis* (1971), 150 Ind. App. 284, 276 N.E.2d 204; *Indiana Bank & Trust Co. v. Lincoln National Bank* (1965), 137 Ind. App. 546, 206 N.E.2d 879.

I.

The Stockwells' status in signing the notes must be determined in accord with IC 1971, 26-1-3-415 (Burns Code Ed.) which reads as follows:

"26-1-3-415 [19-3-415]. Contract of accommodation. party. — (1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

(3) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.

(4) An indorsement which shows that it is not in the chain of title is notice of its accommodation character.

(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

The nature of a party's signature must therefore be based on the reason for which that signature was placed on the note. The nature of liability of an accommodation party is determined by the capacity in which he signed. Therefore, the question of Stockwells' status is relevant only for assertion of special suretyship defenses and failure of consideration.

An analogous case which was decided by this court is *White v. Household Finance Corporation* (1973), 158 Ind. App. 394, 302 N.E.2d 828. In *White*, the primary obligor was unable to obtain a loan because of his age. White lent his signature to the note in order that the funds would be made available to the primary obligor. In the case at bar Carty, the primary obligor, had attempted to obtain the loan in his own name. He had been refused for lack of security. Stockwells then lent their names to the note so Carty could obtain the loan, and thus one of the guidelines for determining accommodation status was settled. *MacArthur v. Cannon* (1967), 4 Conn. Cir. 208, 229 A.2d 372. In addition, Stockwell added the words "Co-signed by" prior to his signature on the first renewal note. While it is true that the second renewal note is the subject of this action, the

entire series of transactions may be examined in determining the status of Stockwell. IC 1971, 26-1-1-205 (Burns Code Ed.). The record also contains evidence that Carty intended, and in fact did, lease a building for the operation of his intended business from Stockwell. This would lend credence to the trial court's ruling that Stockwell was an accommodation maker. The use of the proceeds of the loan has also been held to be an indicator of a maker's status. Stockwell received only an indirect benefit (leasing his real estate to Carty) while Carty received the direct benefit (the funds to commence his business). While no one individual above mentioned factor would demand Stockwell be declared an accommodation party, when the entire transaction is viewed as a whole, the evidence preponderates with the decision of the trial court and we therefore affirm its ruling that the Stockwells are accommodation makers.

## II.

Stockwells next contend that they are not liable on the note by reason of failure to consideration. This contention is based on two foundations. First, to assert failure of consideration to them the Stockwells must be makers and not accommodation parties. An accommodation party's consideration is the primary obligor's receiving the proceeds of the loan and no separate consideration need run to the accommodation maker. IC 1971, 26-1-3-415 (Burns Code Ed.), Indiana Comment 2, to the above statute is illustrative of this theory in saying:

> "(2) This subsection provides that a party is bound to a person taking the instrument for value even though the latter knows of the accommodation. Since the prior obligation of the principal is now made both value and consideration, prior Indiana law is clarified and probably is changed. Thus if M executes a note to E, and after M is bound S signs the same instrument as co-maker or indorser, the prior indebtedness of M constitutes consideration and value of S's promise. See comments to §§ 3-303(b) and 3-408."

Even were it held that the Stockwells were makers and not accommodation parties, their consideration argument would still fail. Initially, the note being sued on was for payment of an

antecedent debt and would therefore be controlled by IC 1971, 26-1-3-408 (Burns Code Ed.) where it states:

> "26-1-3-408 [19-3-408]. Consideration.—Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (section [26-1-]3-305), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind. Nothing in this section shall be taken to displace any statute outside this act [26-1-1-101—26-1-10-106] under which a promise is enforceable notwithstanding lack or failure of consideration. Partial failure of consideration is a defense pro tanto whether or not the failure is in an ascertained or liquidated amount."

We therefore hold that adequate consideration was provided by the Bank to support the note.

### III.

The Stockwells next assert the defense of impairment of collateral pursuant to IC 1971, 26-1-3-606(1)(B) (Burns Code Ed.) which reads:

> "26-1-3-606 [19-3-606]. Impairment of recourse or of collateral.—(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder . . .
>
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

It is the Stockwells' contention that William Stockwell's business experience and his desire to share in the management and control of the proceeds of the note constituted collateral.

While this is no doubt a novel argument, we must hold that no collateral, within the ambit of the impairment of collateral rule, was provided and thus none could be impaired.

IC 1971, 26-1-9-105(c) (Burns Code Ed.) provides the following definition of collateral:

> "(c) 'Collateral' means the property subject to a security interest, and includes accounts, contract rights and chattel paper which have been sold; . . ."

It is evident that control and management of the disposition of funds do not come within the definition of collateral. Impairment of collateral can therefore not be asserted as a defense in the case at bar.

## IV.

The Stockwells next contend that William Stockwell's alleged tender of payment terminated any liability as to interest, costs and attorney fees following the date of that tender. The assertion is founded on IC 1971, 26-1-3-604 (Burns Code Ed.) which reads in pertinent part:

> "26-1-3-604 [19-3-604]. Tender of payment.—(1) Any party making tender of full payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees."

The judgment entered by the trial court indicated that "the defendants absolutely refused to pay attorney fees." The adequacy of the tender is questioned due to conflict in the evidence regarding Stockwell's offer to pay attorney fees.

We find it unnecessary to decide if Stockwells' tender was sufficient. It is clear that a proper tender must be made and kept open if refused. *Malone v. Kirkley* (1948), 118 Ind. App. 611, 82 N.E.2d 530. Numerous decisions have commanded that the tender must be paid into the court in order to be kept open after it had been refused by the party opposing the tender defense. *Moore v. Anchor Federal S. & L.* (1968), 142 Ind. App. 681, 237 N.E.2d 114. The *Moore* case further placed the burden of proof upon the party pleading tender to demonstrate that the technical tender was made and kept open by paying the full amount due into the court. There were no funds paid into the court and therefore, even if a technically adequate tender were made by the Stockwells it was withdrawn when it was not kept open by formal act. We therefore hold that tender cannot be employed as a defense in the case at bar.

## V.

The Stockwells' fifth allegation of error challenges the

sufficiency of the evidence to support the findings of the trial court. More specifically, the Stockwells challenge both the finding that they refused to pay the balance due on the note, and the finding that they refused to pay attorney fees.

William Stockwell's testimony indicates that he informed bank official Barkley that the bank could pay the attorney fees and Stockwell would pay the principal and interest. That same testimony indicates that the Bank, through another official, then attempted to compromise the attorney fees. Stockwell refused the offered compromise. William Stockwell's own testimony provides sufficient evidence to support a finding that they refused to pay attorney fees.

It is clear that the note required payment of attorney fees if the principal and interest were not paid by maturity. It is also evident that the note was not paid prior to filing the suit. Therefore the attorney fees were a part of the amount due. By refusing to pay attorney fees Stockwell refused to pay the balance due on the note and the trial court was correct in so holding.

## VI.

Stockwells' final allegation of error concerns the dismissal of their counterclaim which contained two theories of liability: (1) malicious prosecution; and (2) abuse of process.

By agreement of the parties the counterclaim was to be tried by jury subsequent to and apart from the trial on the bank's complaint. However, as a part of its judgment upon the complaint, the court dismissed the counterclaim summarily, stating in essence that it would be a waste of judicial time to relitigate the rightfulness of the bank's refusal of tender in light of the decision on the merits of the bank's complaint.

Absent a motion for summary judgment or other appropriate motion, we can find no authority to deprive the defendants of their day in court upon their counterclaim. This was error.

We therefore remand this cause for the sole purpose of proceeding upon the counterclaim. In all other respects the judgment of the trial court is affirmed.

Affirmed in part; reversed and remanded in part.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 367 N.E.2d 42.