**Linda Menefee WILLIAMS f/k/a Linda Menefee Huffer, Defendant-Appellant,**

v.

**LAFAYETTE PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellee.**

No. 23A01–8609–CV–256.

Court of Appeals of Indiana, First District.

June 4, 1987.

Rehearing Denied July 29, 1987.

Loretta H. Rush, Jerome L. Withered, Reiling, Teder, Withered and McCabe, Lafayette, for defendant-appellant.

Thomas L. Ryan, Maurice E. McClung, Stuart & Branigin, Lafayette, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, Linda Menefee Williams (Linda), appeals an adverse summary judgment entered by the Fountain Circuit Court in favor of Lafayette Production Credit Association (LPCA) in its suit on a promissory note.

We affirm.

### STATEMENT OF THE FACTS

The facts before the trial court in the summary judgment proceeding were as follows. Linda and Richard D. Huffer (Richard) were married on December 31, 1977, after the execution on that date of a prenuptial agreement which preserved to Linda property valued at $500,000.00, being at that time administered in her father's estate. Linda was the sole heir of the estate, and, being her second marriage, the purpose of the agreement, which was prepared by her attorney, Carl W. Kloepfer, was to protect her property from invasion by her new husband. In Kloepfer's deposition he testified that, within two years after their marriage, Linda and Richard commenced a series of conversations with him relating to their desire to evict the tenant, Wilbur Johnson, from her farm, and buy his interests in hogs and machinery that were owned jointly by the estate and him. They contemplated financing the $83,000.00 purchase with a loan from LPCA. Linda sought Kloepfer's advice as to what obligations would be incurred by her if she executed the note, and he told her she would have the same obligations as her

husband. Kloepfer testified he told her that in the event of default the farm could be reached to satisfy the debt. However, Linda did not seek his advice on the wisdom of executing the note. LPCA called Kloepfer seeking information relative to the farm, which was still in probate, concerning debts, taxes, and the like which Kloepfer supplied. He also explained that Linda was the sole heir. Kloepfer testified that he understood that the collateral would be the hogs and machinery, which was the purpose of the loan. Kloepfer, in fact, prepared the sale agreement. Though LPCA did not say as much, Kloepfer inferred from the circumstances that LPCA would not make the loan unless Linda executed the note also. However, he did not tell Linda this. He also did not tell LPCA about the prenuptial agreement. Throughout his deposition, Kloepfer used the pronoun "they" in describing the actions of Linda and/or Richard in the acquisition of the loan and the purchase of the hogs and equipment.

The deposition of Phillip E. Wilcox, a loan officer of LPCA, was taken and his affidavit was filed. He testified that Linda and Richard came to his office on December 7, 1978, and executed the loan application, which included a financial statement listing the properties of both Linda and Richard. It indicated that Linda and Richard were the applicants and neither the application nor the note, which reflects that Linda is a co-maker, suggests that Linda signed as an accommodation party. Wilcox testified that the note was for $83,391.33, and the purpose of the loan was to purchase Johnson's interest in the hogs and equipment for $83,000.00. A security interest was taken on the equipment and recorded. At the time of the original loan Linda was not reluctant to sign, nor was there any discussion about her signing as an accommodation party. Though Wilcox would not have made the loan without her signing, he did not tell her so as the subject was not raised. The note was renewed on March 10, 1980, March 22, 1982, and again on March 11, 1983. As with the original note, all renewal notes and applications were signed by both Linda and Richard

without reference to Linda being an accommodation party. Upon default on the March 11, 1983 renewal, the principal balance was $76,171.58, the accrued interest was $18,511.43, and attorney fees were assessed by the trial court at $5,000.00.

Linda and Richard separated, and a dissolution action was filed on October 6, 1983. At about this time LPCA learned that Richard had been selling the collateral and making no accounting of the proceeds. LPCA had made no investigation of, nor had it viewed the collateral; at the time of the commencement of the action on December 23, 1985, it assumed the collateral was gone. Like Kloepfer, Wilcox used the pronoun "they" in describing the actions taken by Linda and/or Richard in the acquisition of the loan and the purchase of the hogs and equipment.

Linda's affidavit, made in opposition to LPCA's Motion for Summary Judgment, recited the prenuptial agreement, the discussions with Kloepfer prior to the loan, and the decision that Richard would operate her farm. She recited that an application for financing was submitted to LPCA and the purpose of the $83,000.00 loan was to purchase hogs and machinery. She stated that she believed the collateral was sufficient to secure the loan. Though she said Kloepfer told her she would also have to sign, neither he nor LPCA ever advised her that her farm could be reached to pay the debt.

She recited that with the proceeds of the loan, hogs and machinery were purchased. However, in 1981, Richard decided to abandon farming. Richard prepared the March 11, 1983 application for renewal. The application for the 1982 renewal showed that certain collateral was missing. Linda alleged that LPCA made no effort to safeguard the collateral. She also alleged that when LPCA discovered that collateral was missing, it made no effort to find it. Finally, Linda stated that she received no money from the sale of the machinery.

The trial court, with special findings of fact and conclusions of law, granted LPCA's Motion for Summary Judgment against Linda based on the depositions of

Kloepfer and Wilcox, and the affidavits of Wilcox and Linda. It found that the enterprise was a joint one between Linda and Richard, and that Linda was not an accommodation party. The trial court found that there was insufficient evidence to show that LPCA made no effort to safeguard the collateral.

## ISSUES

The following issues are presented to this court for review:

I. Whether the trial court erred in granting summary judgment for LPCA, because there was evidence before the trial court that Linda was an accommodation party and was therefore entitled to certain defenses.

II. Whether the trial court erred in finding no issue of material fact as to whether LPCA exercised good faith, as required under the Indiana Uniform Commercial Code, in failing to protect and safeguard the collateral.

We will discuss both issues together.

## DISCUSSION AND DECISION

As relevant here, Linda, in her answer, claimed that she was an accommodation party, and was discharged because LPCA allowed Richard to dispose of the collateral. She claims there was sufficient evidence to present an issue of material fact on the question of whether or not she was an accommodation party, and was therefore entitled to certain defenses.

The rules governing summary judgment are well settled. The trial court, and the reviewing court, must consider the evidentiary material most favorable to the party opposing the motion, and resolve all doubts against the movant. *Indiana University Hospitals v. Carter* (1983), Ind.App., 456 N.E.2d 1051. Even where the facts are undisputed the ability to draw from these facts conflicting inferences, which would alter the outcome, makes summary judgment inappropriate. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630, *trans. denied*. The evidence may not be weighed. *Id.* The burden is on the mov-

ant to demonstrate the absence of a dispute of material facts. *Id.*

However, the non-moving party may not simply rest on his pleading. When the moving party establishes the lack of genuine issue of material fact, the opposing party must go forward and contest the motion by setting forth specific facts which show that there is a genuine factual issue. *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221.

■ An accommodation party is defined in IND.CODE 26-1-3-415:

"An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it."

Whether a co-maker is an accommodation party is a question of fact. *White v. Household Finance Corp.* (1973), 158 Ind. App. 394, 302 N.E.2d 828. The nature of a party's signature must therefore be based on the reason for which that signature was placed on the note. The nature of the liabilities of an accommodation party is determined by the capacity in which he signed. *Stockwell v. Bloomfield State Bank* (1977), 174 Ind.App. 307, 367 N.E.2d 42. An accommodation maker's basic liability to a holder is identical to any other maker. Where two or more persons sign as makers as part of the same transaction, they are jointly and severally liable. IND. CODE 26-1-3-118(e). However, the suretyship status of an accommodation party may give him special defenses unavailable to other parties on the instrument. One is that he may be discharged if the holder unjustifiably impairs any collateral or fails to protect any security put in his hands by the principal debtor. *White, supra.*

■ As to the first issue, Linda argues that farming was Richard's business; it was he who needed the loan and her signature. Furthermore, she argues that it was she who was heir to a substantial estate, who was reluctant to subject her inheritance to debt, and who had entered into a prenuptial agreement to protect her assets.

She claims all these matters were evidence that she was an accommodation party.

We disagree. Our reading of the evidentiary material does not lead us to that conclusion. It does not appear that the question of Linda's status as an accommodation party was ever mentioned by anyone, including Linda, prior to either the dissolution action or even this action. There is no statement attributable to her, even in her own affidavit filed in opposition to LPCA's Motion for Summary Judgment, that she intended to sign as an accommodation party. Her own attorney, Kloepfer, with whom she consulted a number of times concerning this matter, does not suggest she had an accommodation-party status. There is no indication that the hogs and machinery purchased by the loan were solely for Richard's benefit. Both Kloepfer and Wilcox described Linda and Richard's venture with the pronoun "they". No one told Linda that her signature was required as a precondition to Richard getting the loan. There is nothing in the documents to indicate that she was an accommodation party, only her protestations in her brief.

■ Even if she were an accommodation party, there is no evidence that LPCA impaired its collateral. Linda relies upon IND.CODE 26–1–3–606(1)(b); that UCC section provides:

> "The holder discharges any party to the instrument to the extent that without such party's consent, the holder unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

She cites the following Indiana cases in support of her position: *Owen County State Bank v. Guard* (1940), 217 Ind. 75, 26 N.E.2d 395; *Crim v. Fleming* (1885), 101 Ind. 154; *Sample v. Cochran* (1882), 82 Ind. 260; *Stewart v. Davis' Executor* (1862), 18 Ind. 74; *Carney v. Central National Bank of Greencastle* (1983), Ind. App., 450 N.E.2d 1034, *trans. denied;*

*Holmes v. Rushville Production Credit Assn.* (1976), 170 Ind.App. 509, 353 N.E.2d 509, *trans. denied; White, supra.* In *Stewart,* collateral physically delivered by the debtor to the creditor was wrongfully disposed of. In *Sample,* the creditor released a lien without the accommodation party's consent. In *Crim* the creditor permitted the debtor to collect and appropriate fees assigned to the creditor as security. *Owen County State Bank* involved a conversion of security by the creditor. In *White* the finance company, upon receipt of an insurance check for a destroyed automobile, permitted the debtor to purchase a new car with the insurance money without notifying the accommodation parties. *Carney* involved prior consent to an extension of time. *Holmes* covered a revised payment schedule.

■ None of these cases presents a situation resembling the facts here. The contract here, between Richard, Linda and LPCA, was that a loan was procured upon the joint application for and upon the joint execution of a note. The property purchased with the loan proceeds remained, as collateral under a security agreement, with Richard and Linda on her farm during the time they lived together as husband and wife. Richard, during that time, absconded with and sold the collateral, consisting of large farm machinery. No affirmative act of impairing the collateral is charged against LPCA. Instead, Linda makes a bare assertion, unsupported by authority, that LPCA had a duty to police her husband's integrity while she was living with him. Inferentially, she assumes that she had no such duty. We are of the opinion when a person knowingly signs an instrument, even as an accommodation party, where the collateral is left in possession of the debtor, the chance that the debtor may wrongfully dispose of the collateral, without necessarily being abetted by the creditor, is a part of the risk assumed. In its essence the role and purpose of an accommodation party is that of guaranteeing both the honesty of the debtor and that the obligation will be paid. The debtor's dis-

honesty cannot be charged to the creditor. There must be some improper act by the creditor.

[7]   Additionally, as stated by the trial court, the note contained a provision whereby the parties consented to the release of any collateral.   Therefore, even if LPCA had deliberately released the collateral, such a consent clause is valid and would have been binding upon Linda.   *See Carney, supra*

For the above reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, C.J., and YOUNG, J. concur.