MARVIN, Chief Judge.
In this 1989 action for the balance owed on a 1977 revolving loan account agreement by a bank customer, which was dismissed on the customer’s exception of prescription, the creditor appeals.
The trial court agreed with the customer’s contentions that the agreement was an “agreement to lend money,” subject to the three-year prescription of CC Art. 3494, and that the last payment on the agreement occurred in 1986, more than three years before the action was instituted on October 30, 1989.
The creditor contends that the agreement was a “non-negotiable promissory note,” subject to the prescription of five years. CC Art. 3498. The creditor alternatively argues that the customer did not prove the last payment was made more than three years before suit was filed.
We affirm.
FACTS
The creditor, The Cadle Company, is the successor in interest to the original creditor, Bossier Bank & Trust Co., where the customer-debtor, Kenneth Richardson, had a checking account. Cadle sued Richardson, who signed the agreement with BB & T in March 1977, and his wife, Tammi, whom he married after he signed the agreement.
The agreement, entitled “Check Credit Account Application and Disclosure Statement,” allowed Richardson to borrow up to $1,000 under a revolving loan account, by writing checks against the account, and to defer payment in full by periodically paying V24 of the balance due, plus a finance charge on the unpaid balance. The agreement will be later detailed.
Richardson used and paid on the account regularly until the summer of 1986, when First National Bank acquired some of the assets of BB & T through the FDIC after BB & T became insolvent. In July 1986, FNB informed Richardson that its data processing system did not allow servicing of Richardson’s “check credit” account, which would be closed, and that Richardson would be billed on a monthly basis until the account was paid in full.
Richardson maintained his checking account with FNB with a balance less than he owed on the BB & T “check credit” account. At Richardson’s request, FNB closed his checking account and applied the balance to the “check credit” account. The record does not show what the balance in Richardson’s checking account was when it was closed, or the exact date his FNB *1054 checking account balance was applied to the “check credit” account.
Richardson introduced two monthly FNB bank statements to support the exception of prescription. The first, for the period ending July 8, 1986, shows a previous balance of $1,157.03, debits of $450 from June 23-July 7, a new balance of $1,628.33, and a total payment due of $68. The stated payment due date of July 8, 1986, may be in error, that date being the same as the closing date on the bank statement.
The second statement shows a previous balance of $1,816.83, a payment by check of $275.63 on October 8, 1986, and a new balance of $1,568.62. The top portion of the statement, showing the closing date, is not attached. The bottom portion of the statement shows a payment due date of November 8, 1986, and shows “.00” in each of the spaces marked Principal Due, Finance Charge and Total Due.
Richardson said he did not personally make any payments on the “check credit” account after August 1986. Richardson did not recall what the balance in his regular checking account was when it was closed. When asked whether the October 8, 1986, payment could have been made on his behalf, Richardson said, “I can’t answer that.” In any event, October 8, 1986, is more than three years before the action was instituted on October 30, 1989.
The Cadle Company acquired FNB’s interest in the agreement from FDIC in August 1988 and filed the action on October 30, 1989, demanding $2,150 in principal and interest. Cadle attempted to introduce a March 1990 letter from Cadle to its attorney, with an FDIC computer sheet attached, showing credits to Richardson’s account for about $60 in interest payments in January and February 1987, within the three years before suit was filed. The trial court sustained Richardson’s hearsay objection to the evidence, allowing Cadle to place the letter and attachment in the record as a proffer.
After hearing argument about the character of the agreement (non-negotiable promissory note, prescribing in five years, versus agreement to lend money, prescribing in three years), the trial court found that “this is an action regulated under [CC Art.] 3494,” the three-year prescriptive period for an agreement to lend money.
The court found that the action had prescribed because “no payments were made” within the three-year period ending October 30, 1989.
CHARACTER OF AGREEMENT
Cadle concedes that the agreement is not a negotiable promissory note because it is not payable to order or to bearer, but emphasizes that the five-year period in CC Art. 3498 applies as well to a non-negotiable note. Cadle contends the agreement is a non-negotiable note, which is “an unconditional promise in writing made by one person to another signed by the maker engaging to pay on demand, or at a fixed determinable future time, a sum certain in money.” DeRouin v. Hinphy, 209 So.2d 352, 354 (La.App. 4th Cir.1968), writ denied.
We emphasize pertinent parts of the agreement:
BOSSIER BANK CHECK CREDIT ACCOUNT APPLICATION AND DISCLOSURE STATEMENT
I request that Bossier Bank and Trust Company (hereafter called BANK) make available to me a revolving loan account under which, in the manner and subject to the conditions appearing below, BANK will make loans to me but not in amounts which will increase the balance in my account above [$1,000.00] or such smaller amount as BANK may be willing to approve. If BANK accepts this application, BANK will advise me in writing of the maximum amount it will allow me to have outstanding on my account at any one time and BANK will send me a supply of check forms which I will use to draw against my account. ...
Under BANK’S revolving loan account, I will be permitted to borrow money subject to the limitations set forth in the previous paragraph. The unpaid balances of the amounts financed arising from the loans and any applicable FI *1055 NANCE CHARGES will be charged to my account. I will have the privilege of deferring the payment of the balance due as hereafter set forth.
I will receive a periodic statement each month setting forth for each billing cycle among other things, the amount of money borrowed, my payments and credits, and all applicable FINANCE CHARGES.
[[Image here]]
I promise to pay to BANK at its office all principal sums with accrued FINANCE CHARGES borrowed hereunder. However, I may defer the payment in full and instead pay a minimum periodic payment of Yuth of the minimum payment balance of my account plus all current FINANCE CHARGES.
[[Image here]]
I understand that if BANK accepts this application BANK’S commitment to make loans runs to me exclusively and I shall not assign any rights hereunder to anyone. ... If this application is signed by me and a co-signer, each of us may draw checks on my account. ...
I have read this application and disclosure statement. It constitutes my offer for BANK’S revolving loan account ...
The reverse side of the agreement contains Truth-in-Lending disclosures concerning billing errors.
We agree with Cadle that the fact that the agreement is entitled “application” does not, of itself, preclude a finding that the agreement is a non-negotiable “note.” The character of the agreement is determined by examining the entire writing. See and compare Schulingkamp v. Vista Shores Club, 318 So.2d 907 (La.App. 4th Cir.1975), writ denied, and Fejta v. Werner Enterprises, Inc., 412 So.2d 155 (La.App. 4th Cir.1982), writ denied.
Cadle contends the “sum certain” requirement for a promissory note is satisfied because Richardson promises in the agreement to pay “a minimum amount each month.”
The 1977 agreement establishes a credit limit of $1,000, “or such smaller amount as BANK may be willing to approve.” The bank statements in evidence indicate that Richardson’s credit limit was $2,500 in 1986. The account balances on the bank statements range from about $1,200 to about $1,800. Cadle sued for $2,150 in principal and interest in 1989.
Neither the principal amount of the obligation, nor the dollar amount of the minimum monthly payments, is ascertainable from the face of the agreement, which was obviously accepted by BB & T. Both the principal and the monthly payment are variable amounts, depending on the extent of Richardson’s allowable “credit” and his “use” of the account once the bank accepted the application or the “offer for BANK’S revolving loan account.” A “hand note” is not contemplated in the agreement. The agreement is not a guarantee to pay another’s account up to a sum certain, but is an agreement to lend money up to some sum, which was originally not to exceed $1,000 and which was unilaterally increased by the bank to $2,500 after the agreement was executed. If Richardson had not written any checks against the account, the principal balance would have been zero, notwithstanding that the agreement, once accepted by the bank, afforded Richardson the privilege of borrowing “up to” $1,000, or up to the amount unilaterally determined by the bank.
The agreement refers to monthly statements and minimum monthly payments but does not purport to establish a due date for the outstanding balance. Richardson's account was closed because FNB, the successor bank to BB & T, did not have the data processing capabilities to service the “check credit” account, and not because the debt had “matured” under the terms of the agreement.
On this record, we find no error in the trial court’s implicit conclusion that the agreement was not a non-negotiable note.
The “revolving” aspects of the agreement would not have defeated Richardson’s obligation to pay the debt he incurred had the suit been timely brought, but these “aspects” simply do not allow the conclusion that Richardson’s obligation under the agreement was an unconditional promise to *1056 pay a sum certain in money at a fixed determinable future time. See and compare DeRouin v. Hinphy, supra, and Glass v. Bell, 46 So.2d 668 (La.App.2d Cir.1950).
We find the trial court correctly determined that Cadle’s action is subject to the three-year prescriptive period legislatively established for an agreement to lend money, Richardson’s “request” or “offer,” accepted by BB & T, being the agreement. CC Art. 3494.
DATE OF LAST PAYMENT
We also agree with Cadle that Richardson, as the party pleading prescription, had the burden of proving that no payments were made on the account within three years before suit was filed. See Pearson v. Hartford Accident & Indemnity Company, 281 So.2d 724 (La.1973), and Foster v. Manville Forest Products Corp., 465 So.2d 920 (La.App.2d Cir.1985).
Cadle contends the trial court was clearly wrong in finding that Richardson met this factual burden by his testimony “that no payments were made after August, 1986,” because Cadle “produced [contrary written] evidence that showed payments were credited to [the] account after August, 1986.”
While Richardson said that he did not personally make any payments on the account after August 1986, he, and not Cadle, introduced the bank statement showing a credit to the account on October 8, 1986, yet more than three years before Cadle filed suit on October 30, 1989.
Cadle’s proffered evidence (its letter and the FDIC computer sheet), hearsay and not identified as a business record, purporting to show two credits to the account for interest payments totaling about $60 in early 1987, was correctly ruled inadmissible, in our opinion. Cadle does not specifically complain of that ruling in its appeal.
When Richardson was questioned about the 1987 credits before the Cadle letter and FDIC computer sheet were offered and objected to, he denied that he made the interest payments, stating he did not know why the 1987 credits were shown on the computer sheet.
The trial court obviously found Richardson’s denial credible. Cadle did not rebut Richardson’s categorical denial or otherwise substantiate its contention that Richardson made payments on the account within three years before suit was filed. The trial court made a factual determination in this respect which we cannot find clearly wrong.
CONCLUSION
On this record, we find no error in the trial court’s conclusion that Richardson sustained his burden of proof, legally and factually.
DECREE
At Cadle’s cost, the judgment is
AFFIRMED.