Sam **YIN** and Sophia **Kung,**
Appellants–Defendants,

v.

**SOCIETY NATIONAL BANK INDIANA,**
Appellee–Plaintiff.

No. 20A04–9409–CV–361.

Court of Appeals of Indiana.

May 10, 1996.

Rehearing Denied Aug. 5, 1996.

Alan Verplanck, Cathleen M. Shrader, Barrett & McNagny, Fort Wayne, for Sophia Kung.

Sam Yin, Appellant pro se.

Robert J. Palmer, Jeffery A. Johnson, May, Oberfell & Lorber, South Bend, for Appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Defendants–Appellants, Sam Yin ("Yin") and Sophia Kung ("Kung") appeal from the grant of partial summary judgment in favor of Plaintiff–Appellee, Society National Bank ("Society"). We reverse and remand for trial on the merits.

### Issues

The parties present numerous issues which we consolidate and rephrase as follows:

I. Whether the defendants raised a genuine issue of material fact as to the available surety defenses;

II. Whether Society is entitled to a remand for a determination of appellate attorneys' fees; and,

III. Whether sanctions should be assessed against Yin, Kung, and/or their attorneys.

### Facts and Procedural History

The undisputed facts are as follows. On January 2, 1991, Society agreed in a note to lend U.S.A. Diversified Products, Inc. ("USAD") up to $2,000,000.00 in the form of an operating line of credit. Paul Davis ("Davis") signed the note both personally and as the president of USAD. Yin, who jointly owns USAD with Davis, signed the note personally. Kung, who at that time was married to Yin, also signed the note personally. During negotiations regarding the note, Society directly dealt only with Davis. Once negotiations were finalized, Davis took the note, obtained Yin's and Kung's signatures, and returned it to Society. No party challenges the authenticity of any of the signatures on the 1991 note. The outstanding balance was to be paid on April 30, 1992, the note's expiration date.

Following the execution of the note, USAD accountant and comptroller, Gene Leedy ("Leedy"), and Burl Troyer ("Troyer"), Society's commercial loan officer, discussed the value of USAD's inventory. The exact tenor of the discussions is disputed. Society maintains that Troyer merely told Leedy to accurately report its inventory to Society in the financial statements. Citing Leedy's testimony, Yin and Kung assert that Society was asking USAD to produce two sets of financial statements each month—"beefing up" one of the statements. (R. 536–37, 539).

Some time prior to the end of April, 1992, Davis told Society that a 60–day extension of the original payment date was needed. Society agreed to the extension. Davis represented that he would obtain Yin's and Kung's signatures as he had for the 1991 document. However, for purposes of this partial summary judgment, the parties agree that Yin's and Kung's signatures were forged on the extension document.

As a result of USAD's default on the line of credit, Society filed a complaint against USAD, Davis, Yin, and Kung on December 8, 1992. On May 27, 1994, the trial court granted partial summary judgment in favor of Society and against Yin and Kung in the amount of $2,160,331.73 including interest and attorney fees and expenses. (R. 878).

### Discussion and Decision

#### I. Summary Judgment

##### A. Standard of Review

 Upon review of a grant of summary judgment, we apply the same legal standard as the trial court: summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

Ind.Trial Rule 56(C); *Hupp v. Canal Ins. Co.*, 654 N.E.2d 901, 902 (Ind.Ct.App.1995), *reh. denied.* On review, we may not search the entire record to support the judgment, but may consider only that evidence which had been specifically designated to the trial court. *Keating v. Burton,* 617 N.E.2d 588 (Ind.Ct.App.1993), *reh. denied, trans. denied.* The party appealing the trial court's grant of summary judgment has the burden to persuade this court that the trial court's decision was erroneous. *Dillman v. Great Dane Trailers, Inc.,* 649 N.E.2d 665, 667 (Ind.Ct. App.1995). We will construe all doubts in favor of the nonmovants, Yin and Kung. *See Progressive Construction & Engineering Co., Inc. v. Indiana & Michigan Electric Co., Inc.,* 533 N.E.2d 1279, 1284 (Ind.Ct.App. 1989).

*B. Is this line of credit a negotiable instrument?*

■ Indiana Code Sections 26–1–3–101 *et seq.* apply only to negotiable instruments. *Farmers Loan & Trust Co. v. Letsinger,* 652 N.E.2d 63, 65 (Ind.1995). Non-negotiable agreements are governed by Indiana common law. *Id.;* Ind.Code § 26–1–1–103. Yin and Kung challenge the trial court's finding that their agreement for a line of credit is a negotiable instrument. As such, we determine whether this line of credit is a negotiable instrument. We hold that it is not.

■ In determining the negotiability of an agreement, we apply the law in effect at the time of the execution of the agreement. *Michael v. Rainier,* 205 N.E.2d 543, 544, 246 Ind. 293 (1965). At the time the line of credit agreement was executed, a negotiable instrument had to:

(a) Be signed by the maker or drawer; and

(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

(c) Be payable on demand or at a definite time; and

(d) Be payable to order or to bearer.

Ind.Code Sec. 26–1–3–104(1) (Burns 1992). Yin and Kung assert that their line of credit meets neither the sum certain nor the unconditional requirement. Although they cite no Indiana cases, they have not waived the argument because no Indiana court has directly addressed this issue. Moreover, they did not invite the error as they did not initially rely upon UCC provisions.

Other courts have faced the issue or a situation quite similar to it and held that such an agreement is not a negotiable instrument. For example, in *Resolution Trust Corp. v. Oaks Apts. Joint Venture,* 966 F.2d 995 (5th Cir.1992), *reh. denied,* the Fifth Circuit agreed with a district court's opinion that "[t]he note in this case does not contain an obligation to pay a 'sum certain,' but rather 'the sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000) or so much thereof as may be advanced....'" *Id.* at 1001; *see also In re Hipp v. Lawrence Systems et al.,* 71 B.R. 643 (N.D.Tex.1987). The Fifth Circuit reasoned that the language employed by the note failed to disclose the exact amount to be repaid. *Resolution,* 966 F.2d at 1001. That is, the amount advanced to the parties could not be determined with certainty absent an inquiry to other documents. Accordingly, the note did not facially demand payment of a sum certain, and hence was not negotiable. *Id.; See also Cadle Co. v. Richardson,* 597 So.2d 1052 (La.Ct.App.1992) (holding that a revolving loan account was not an unconditional promise to pay a sum certain); *Goss v. Trinity Savings & Loan,* 813 P.2d 492 (Okla.1991) (holding that an unconditional guarantee did not contain a promise to pay a sum certain in money because the principal amount was adjustable); *In re 1301 Connecticut Ave. Assoc. v. Resolution Trust Corp.,* 126 B.R. 823 (D.C.1991) (holding that a construction loan, containing a condition whereby the principal could increase, was not a negotiable instrument because it was not an unconditional promise to pay a sum certain).

■ The parties do not seriously dispute that the agreement in the present case is a line of credit upon which USAD could make draws of varying amounts. Indeed, the face of the note contains a notation regarding

"draws." We note that although USAD did make various draws upon the line of credit, it was under no obligation to make any draws whatsoever. In fact, if USAD had never drawn upon the line of credit, it would have owed nothing when the agreement matured. The principal would have been zero. This is noteworthy because it illustrates an important feature of the line of credit: in order to ascertain the principal owed, one must look beyond the agreement itself. A current history of USAD's draws would also be necessary in order to calculate the amount USAD owed. Because of the potentially variable principal which results from such an arrangement, the line of credit contains no sum certain. In addition, USAD's ability to make draws up to two million dollars was not unfettered. It was dependent upon the sufficiency of USAD's accounts receivable. That is, if USAD sold the accounts receivable (Society's security), then Society "in all likelihood ... would put a hold on any further draws." (Troyer dep., Vol. II, at 22–23). Society conditioned USAD's access to the line of credit by tracking the company's collateral. Lacking an unconditional promise to pay a sum certain, the line of credit falls outside the definition of a negotiable instrument.[1] Thus, in addressing the parties' other issues regarding the line of credit, we apply Indiana common law.

*C. Does a genuine issue of material fact exist regarding the parties' status and/or their common law defenses?*

▪ Yin and Kung assert that a genuine issue of material fact exists as to the capacity in which they signed the agreement for the line of credit. The trial court's findings and conclusions on the matter are as follows:

2. The defendants Sam Yin and Sophia [Kung] state themselves to have been accommodation parties on the first note, to guarantee payment by the corporate maker . . . .

3. The plaintiff, for the limited purpose of its motion for summary judgment, admits that both Sam Yin and Sophia [Kung] were accommodation parties on the note of January 2, 1991.

4. Pursuant to the Indiana Uniform Commercial Code, an accommodation party is liable in the capacity in which he signs. I.C. 26–1–3–415(2).

5. Sam Yin and Sophia [Kung] signed the note as makers and each is liable on the note as a maker, even if an accommodation status renders them accommodation makers (or sureties) as among the several makers; accordingly, an extension allowed by the payee Plaintiff does not discharge any maker. Sam Yin and Sophia [Kung] are jointly and severally liable on the note with the other makers.

(R. 877).

▪ Generally, whether a co-maker is an accommodation party is a question of fact. *Farmers Loan & Trust Co. v. Letsinger,* 635 N.E.2d 194, 196 (Ind.Ct.App.1994), *affirmed and adopted by* 652 N.E.2d 63, (hereinafter, our supreme court decision shall be referred as *"Farmers,"* and the court of appeals decision shall be referred to as *"Letsinger"*). Therefore, the nature of a party's signature must be based on the reason for which that signature was placed on the note. The nature of the liabilities of an accommodation party is determined by the capacity in which he or she signed. *Williams v. Lafayette Prod. Credit Assoc.,* 508 N.E.2d 579, 582 (Ind.Ct.App.1987), *reh. denied,* citing *Stockwell v. Bloomfield State Bank,* 174 Ind.App. 307, 367 N.E.2d 42 (1977) (overruled in part on other grounds, *Farner v. Farner,* 480 N.E.2d 251 (Ind.Ct.App.1985)). An accommodation maker's basic liability to a holder is identical to any other maker. However, the "suretyship status of an accommodation party[2] may give him special defenses unavail-

---

**1.** In reaching this conclusion, we distinguish between a variable principal and a variable interest rate. Unlike the former, the latter would not destroy the negotiability of an instrument. See Ind.Code § 26–1–3–106 (Burns 1992) which notes that in 1990, the section stating that variable interest rates do not affect negotiability was enacted.

**2.** An accommodation party is considered a surety. *Letsinger,* 635 N.E.2d at 197; 2 James J. White & Robert S. Summers, Uniform Commercial Code § 16–10, at 107 (4th ed. 1995). Further, we recognize that the words "guaranty" and "guarantor" are synonyms for "suretyship" and "surety," respectively. *Farmers,* 652 N.E.2d at 66, n. 2 and accompanying text.

able to the general run of parties on the instrument." *White v. Household Finance Corp.*, 158 Ind.App. 394, 302 N.E.2d 828, 832 (1973).

For purposes of summary judgment, Yin and Kung were deemed accommodation parties, also known as sureties. That is, the parties stipulated to what normally could have been a genuine issue of material fact. However, while the trial court did label them as accommodation makers (sureties), it appears that the trial court did not take into consideration the ramifications of this status. The trial court seemed to treat them as ordinary makers without discussing the possible special defenses available to Yin and Kung as a result of their accommodation maker (surety) status. Hence, in that respect, Yin's and Kung's status was questionable.

■■■■ Yin and Kung also assert that a genuine issue of material fact exists regarding their common law surety defenses. A factual issue is "genuine" if it cannot be resolved by reference to undisputed facts; therefore, a grant of summary judgment is improper if the court must weigh conflicting evidence to reach the decision. *Fortmeyer v. Summit Bank*, 565 N.E.2d 1118, 1120 (Ind. Ct.App.1991). A fact is "material" for summary judgment purposes if it bears on the ultimate resolution of relevant issues. *Id.*

■■■■ "Guarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect or impairs or suspends the remedy for its enforcement." *Farmers*, 652 N.E.2d at 66 (quoting *Weed Sewing Machine Co. v. Winchel*, 107 Ind. 260, 7 N.E. 881 (1886)); *see also* 2 White & Summers, *supra*, § 16–10 at 106 ("The law has traditionally held that conduct by the creditor which increases the surety's risk discharges the surety or reduces the surety's obligation pro rata."). Moreover, when the principal and obligee cause a material alteration of the underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability. *Cunning-*

ham v. Mid State Bank*, 544 N.E.2d 530, 534 (Ind.Ct.App.1989), *reh. denied, trans. denied; Merchants Nat'l Bank and Trust Co. v. Lewark*, 503 N.E.2d 415, 416 (Ind.Ct.App.1987), *reh. denied, trans. denied.* A material alteration which will effect a discharge of the guarantor must be a change which alters the legal identity of the principal's contract, substantially increases the risk of loss to the guarantor, or places the guarantor in a different position. *Cunningham*, 544 N.E.2d at 534. The change must be binding. *Houin v. Bremen State Bank*, 495 N.E.2d 753, 759 (Ind.Ct.App.1986).

■■■ Because the change must be a material and binding one, we cannot agree with Yin's and Kung's assertion that the forged extension note serves to discharge them from the potential liability they incurred upon signing the original 1991 agreement. They cannot be bound by a document (here, the extension note) which does not bear their signatures. In addition, by signing the 1991 note which contained a consent to future extensions provision, they explicitly gave prior consent to an extension. *See Carney v. Central Nat'l Bank of Greencastle*, 450 N.E.2d 1034 (Ind.Ct.App.1983) (consent to changes may be given prospectively in an instrument). Accordingly, the extension note has no effect on their liability. However, we reach a different conclusion on the issue of whether other actions by Society and USAD may discharge Yin and Kung from liability as sureties.

■■■ Yin and Kung cite *Indiana Telco Fed. Credit Union v. Young*, 156 Ind.App. 483, 297 N.E.2d 434, 435 (1973) for the following proposition: it is well established that a creditor's failure to notify a surety of a debtor's misconduct discharges the surety. Society asserts that the creditor's duty to disclose is not as global as the quote from *Indiana Telco* might lead one to believe. Society advocates the application of § 124(2) of the *Restatement of Security* (1941) in situations like the present. While we do not explicitly adopt § 124(2),[3] we agree with So-

---

**3.** Section 124(2) provides: [w]here, during the existence of the suretyship relation, the creditor discovers facts unknown to the surety which

would give the surety the privilege of terminating his obligation to the creditor as to liability for subsequent defaults, and the creditor has reason

ciety that a creditor's mere failure to notify a surety of a debtor's misconduct does not automatically discharge the surety. Were it otherwise, a surety who had full knowledge of a debtor's misconduct could be discharged if the creditor failed to independently notify the surety. This cannot be the intended result of the statement in *Indiana Telco.*

In the present case, evidence was presented tending to indicate that USAD was not abiding by certain terms of the agreement and/or was impairing the collateral involved (understating inventory to the IRS which could lead to a tax lien impairing the collateral; failing to keep a majority of its cash holdings in Society Bank). Additionally, evidence was introduced from which one might infer that Society acquiesced to, or perhaps encouraged, USAD's deviations. Society, for its part, introduced evidence to the contrary.

Yin and Kung assert that as mere sureties living primarily in a different continent from USAD's headquarters, they were unaware of any deviations. As a part owner of USAD, Yin's argument may not be the strongest in this regard. In making this observation, we are weighing facts material to the resolution of this case. Summary judgment is not appropriate if we merely think Yin and/or Kung have a weak case. Genuine issues of material fact exist as to (1) whether Society discovered facts unknown to Yin and Kung which would have given them the option of terminating their obligation to Society, (2) whether Society had reason to believe that Yin and Kung did not know of these deviations, and (3) whether Society had a reasonable opportunity to communicate these deviations to Yin and Kung. These genuine issues of material fact should have precluded the entry of summary judgment.

## II. Attorneys' Fees

Society argues that because the line of credit agreement contains a provision for recovering attorneys' fees, it is entitled to a remand for the limited purpose of conducting a hearing to determine a reasonable ap-

pellate fee. We agree that appellate attorneys' fees may be appropriately awarded if a contractual provision calls for them and the party requesting the fees prevails. *Burras v. Canal Const. and Design Co.*, 470 N.E.2d 1362, 1370 (Ind.Ct.App.1984) (citing *State ex. rel. Uebelhor v. Armstrong*, 252 Ind. 351, 248 N.E.2d 32, 38 (1969)). However, in view of our resolution of the first issue, Society is not entitled to appellate attorneys' fees.

## III. Sanctions

On April 24, 1995, Society filed its appellee's brief. On that same day, Yin's counsel at that time (who later withdrew from the case) filed a notice to this court. The notice explained that Yin's counsel relied upon West's Annotated Indiana Code in making the argument that a variable interest rate destroys negotiability. Unfortunately, that version of the Code did not contain a full and complete history of the amendments to Ind. Code § 26–1–3–106. As a result, Yin's counsel was unaware that the Code was amended in 1990 to state that variable interest rates do not affect negotiability. The notice asked that we disregard that portion of Yin's appellant brief which discussed a variable interest rate's effect upon negotiability.

On April 28, 1995, Society filed a verified petition for sanctions against Yin, Kung, and/or their attorneys, claiming that the appellants' variable interest rate argument was meritless and frivolous. The decision to award sanctions is permissive. See Ind. Appellate Rule 15(G); *Tipton v. Roerig,* 581 N.E.2d 1279, 1285 (Ind.Ct.App.1991) ("An award of damages under App.R. 15(G) is discretionary and may be ordered when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay."). In exercising our discretionary power to award damages on appeal, we use extreme restraint. *Orr v. Turco Mfg. Co., Inc.,* 512 N.E.2d 151, 152 (Ind. 1987).

Relying upon a well recognized authority to provide an accurate representation of

---

to believe these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety without a violation of the confidential duty, the creditor has a duty to noti-

fy the surety, and breach of this duty is a defense to the surety except in respect of his liability for defaults which have occurred before such disclosure should have been made.

Indiana commercial law is not the type of conduct which would warrant sanctions. While the variable interest rate argument was actually meritless, there was no evidence of bad faith, frivolity, harassment, vexatiousness, or purpose of delay. To the contrary, the very same day Yin's attorneys were alerted to the problem, they filed the notice admitting the mistake and clarifying the issue. Kung's counsel never even made the variable interest rate argument. We are unpersuaded that Society should receive reimbursement because it was "forced" to expend substantial time and resources (as well as numerous pages in its appellee brief) answering the variable interest rate argument. A few sentences would have sufficed to point out the mistake. It was Society's counsel's choice to give the issue extension coverage. Sanctions are inappropriate.

Reversed and remanded for trial on the merits.

DARDEN, J., concurs.

SHARPNACK, C.J., concurs with separate opinion.

SHARPNACK, Chief Judge, concurring.

Although I agree with the disposition of this case by the majority, I come to agreement by a different path. The majority opinion begins its analysis with the preliminary question of whether "this line of credit" constitutes a negotiable instrument. However, I respectfully urge that the appropriate threshold question is whether the document in question is a negotiable instrument. Contrary to the majority determination, I answer that question in the affirmative. Moreover, I find that the document is not a line of credit but rather a note for two million dollars.

The document with which we deal here provides as follows:

"On April 30, 1992 for value received, the undersigned ("Borrower") promises to pay to the order of SOCIETY BANK, INDIANA ("BANK") at its principal office in South Bend, Indiana: Two Million and

00/100 DOLLARS with interest from date hereof to maturity or until paid in full...."

Record, p. 33. In the right margin of the document is a notation under the heading "disbursement" which indicates "Draws to C/A #946009-372." Record, p. 33.

A negotiable instrument must meet the following qualifications:

"(1) Be signed by the maker or drawer; and

(2) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

(3) Be payable on demand or at a definite time; and

(4) Be payable to order or to bearer.

Ind.Code § 26–1–3–104(1).[4] In determining the negotiability of an instrument, a court may look only to the face of the document. *See First State Bank at Gallup v. Clark*, 570 P.2d 1144, 1146 (N.M.1977); *Walls v. Morris Chevrolet, Inc.*, 515 P.2d 1405, 1406 (Okla.Ct. App.1973). This restriction satisfies the purposes underlying a negotiable instrument, which is:

"to declare that transferees in the ordinary course of business are only to be held liable for information appearing in the instrument itself and will not be expected to know of any limitations on negotiability or changes in terms, etc., contained in any separate documents. The whole idea of the facilitation of easy transfer of note and instruments requires that a transferee be able to trust what the instrument says, and be able to determine the validity of the note and its negotiability from the language of the note itself."

*Gallup*, 570 P.2d at 1147. In addition, "[n]egotiable notes are designed to be couriers without excess luggage ... and so negotiability must be determined from the face of the note without regard to outside sources." *Walls*, 515 P.2d at 1407.

---

**4.** Ind.Code §§ 26–1–3–101 *et seq.* were repealed effective July 1, 1994, and codified at I.C. §§ 26–1–3.1. However, the court must apply the law in effect at the time of the execution of the agree-

ment, *Michael v. Rainier*, 246 Ind. 293, 205 N.E.2d 543, 544 (1965), and, therefore, I.C. §§ 26–1–3–101 *et seq.* must be applied to this case.

Pursuant to the terms of this instrument, there is a clear unconditional promise to pay two million dollars. The only troubling aspect of the note is the reference to the "draws" language. The majority relies on this language to substantiate its conclusion that the instrument is a line of credit which is not negotiable because the sum certain requirement is not satisfied. The majority also uses the "draws" language to demonstrate that the unconditional promise requirement is not satisfied because USAD's ability to make draws on the account was dependent on the sufficiency of USAD's accounts receivable. Majority opinion at 62–63.

However, I find that the "draws" language does not destroy the negotiability of an otherwise negotiable instrument. The "draws" reference does not tell us anything, let alone that the parties may have issued this note in conjunction with a line of credit. For all the document shows, Yin and Kung promised to pay two million dollars. Furthermore, that the parties may have issued this note in conjunction with a line of credit is immaterial to the present issue. In determining the negotiability of this instrument, this court is bound by the written terms of the note. The reference to the "draws" language does not otherwise demonstrate that the note is non-negotiable.

Finally, I find that the cases relied upon by the majority to support its conclusion that the note does not satisfy the sum certain requirement are distinguishable. In support of its argument, the majority relies on two cases: *Resolution Trust Corp. v. Oaks Apts. Joint Venture*, 966 F.2d 995 (5th Cir.1992), *reh'g denied* and *In re Hipp v. Lawrence Systems*, 71 B.R. 643 (N.D.Tex.1987). In *Resolution Trust*, the Fifth Circuit upheld the district court's determination that a note for "TWO MILLION AND NO/100 DOLLARS ($2,000,000.00) or so much thereof as may be advanced in accordance with the terms of a certain Loan Agreement ..." did not constitute a sum certain. *Resolution Trust*, 966 F.2d at 1001–1002. The Fifth Circuit reasoned "that the Note fails to disclose the payment of a sum certain. The language employed by the Note fails to disclose the exact amount to be repaid by the Partners. The amount advanced to the Partners cannot be certainly determined absent an inquiry to other documents. Since the Note does not facially demand payment of a sum certain, the Note is non-negotiable." *Id.*

In *Hipp*, the Northern District of Texas Bankruptcy Court resolved a similar issue. The court reasoned that a promise to pay $2,000,000.00 "or so much thereof as may be advanced" did not constitute a sum certain. *Hipp*, 71 B.R. at 648.

However, absent from the present note is the limiting language found in the *Resolution Trust* and *Hipp* notes. Because the present note does not contain such limiting language, the cases relied upon by the majority are not dispositive. Rather, the note on its face promises payment of a sum certain of $2,000,000.00. Accordingly, I find that the note provides for an unconditional promise to pay a sum certain, and thus, qualifies as a negotiable instrument.

On finding that the note is a negotiable instrument, the next step is to determine whether Yin and Kung, the sureties, are limited to I.C. § 3–606 defenses (the "UCC defenses") or, whether they may raise common law defenses as well. Because the majority determined that the note was nonnegotiable, the majority opinion did not address the scope of the UCC surety defenses, which are applicable only to negotiable instruments.

Yin and Kung argue that the trial court erred in denying them the benefit of common law surety defenses and restricting them to UCC defenses. The analysis begins with I.C. § 26–1–1–103 which provides, "[u]nless displaced by the particular provisions of IC 26–1, the principles of law and equity, ... shall supplement the provisions of IC 26–1." I.C. § 26–1–1–103. Yin and Kung contend that the trial court erroneously excluded common law surety defenses despite the fact that I.C. § 26–1–3–606 did not displace those common law defenses. Society contends that if the surety defenses were not limited to those provided in I.C. § 26–1–3–606, then neither it nor the court would be able to look to the statute for guidance as to acceptable defenses.

However, in light of the express language of I.C. § 26–1–1–103, Society's argument is not persuasive. Applying the mandate of I.C. § 26–1–1–103, the common law defenses may not be excluded absent an express provision in I.C. § 26–1–3–606. Therefore, the trial court erred in denying the appellants the benefit of such defenses. Moreover, as demonstrated in the majority opinion, there are genuine issues of material fact as to those defenses which preclude the entry of summary judgment.

Accordingly, upon this rationale, I am able to concur in the determination that the entry of summary judgment should be reversed and this cause remanded for a trial on the merits.